In re Seymour J. GEFEN, Debtor,

William ROEMELMEYER, Trustee,
Plaintiff,

v.

Seymour J. GEFEN and the National
Investors Life Insurance
Company, Defendants.

Bankruptcy No. 83–00652–BKC–SMW.
Adv. No. 83–0733–BKC–SMW–A.

United States Bankruptcy Court,
S.D. Florida.

Jan. 6, 1984.

---

5. *Accord: Wes-Flo Inc. v. Wilson Freight Co. (In re Wilson Freight Co.)*, 13 B.R. 617, 620 (Bkrtcy.S.D.Ohio, W.D.1981).

William Roemelmeyer, Miami, Fla., trustee.

Barry H. Dubner, Miami, Fla., for trustee.

Alan E. Greenfield, Miami, Fla., for debtor/defendant.

Patrick Barry, Fort Lauderdale, Fla., for creditor Landmark 1st Nat. Bk. of Fort Lauderdale.

Naomi Haas-Perlman, Miami, Fla.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

SIDNEY M: WEAVER, Bankruptcy Judge.

This Cause having come on to be heard upon a Complaint To Avoid Fraudulent Transfer and the Court having heard the testimony and examined the evidence presented, observed the candor and demeanor of the witnesses and being otherwise fully advised in the premises, does hereby make the following findings of fact and conclusions of law:

A final judgment in the amount of $69,550.17 was entered against the debtor on October 21, 1981, in which the state court reserved jurisdiction to award attorneys' fees. A Motion To Award Attorneys' Fees was set for hearing and the debtor was served with a subpoena duces tecum for taking deposition in aid of execution on November 23, 1981. The subpoena required the defendant to produce all records relevant to his assets that could be levied against and sold to satisfy the judgment. On November 27, 1981, little more than a month after the Final Judgment was entered, four days after being served with a subpoena duces tecum in aid of execution and seven days before his scheduled deposition in aid of execution, the debtor transferred $28,203.53 from his individual retirement accounts ("I.R.A.") into a deferred annuity contract issued by National Investors Life Insurance Company of Little Rock, Arkansas. These two I.R.A. accounts, which had been established pursuant to 26 U.S.C. § 408(a) and were being held by two separate banking institutions, were merely funds held on deposit for the debtor and were not subject to any contract

of arrangement which provided for periodic payments to the debtor or which limited his control over those funds.

On April 12, 1983 the debtor filed a Voluntary Petition in Bankruptcy claiming the deferred annuity as Exempt Property on his B4 Schedule.

The Complaint in the above styled adversary proceeding consists of three Counts which the Court will consider in order.

## COUNT I

### FRAUDULENT TRANSFER PURSUANT TO BANKRUPTCY CODE SECTION 548

■ Count I of the Complaint alleges that the "transfer" in question occurred on November 27, 1981 and that the debtor filed his Petition in Bankruptcy on April 12, 1982. The trustee contends that the "transfer" of funds into the annuity contract was made with the actual intent to hinder, delay and defraud creditors as contemplated by Bankruptcy Code Section 548. That section, however, expressly limits itself to transfers or obligations made or incurred on or within one year before the date of filing the Bankruptcy Petition. The Complaint incorrectly alleges that the debtor filed a Petition in Bankruptcy on April 12, 1982, in that the Petition bears a filing date of April 12, 1983. Therefore, the Court finds the "transfer" to be beyond the time limitations of Section 548 and denies relief under Count I of the Complaint.

## COUNT II

### FRAUDULENT CONVEYANCE PURSUANT TO CHAPTER 726 OF THE FLORIDA STATUTES AND BANKRUPTCY CODE SECTION 544

■ Pursuant to Bankruptcy Code Section 544(b) the trustee has the power of an actual unsecured creditor and if under state law the actual unsecured creditor could attack a certain transaction, so may the trustee.

*Fla.Stat.* § 726.01 provides in pertinent part:

Every feoffment, gift grant, alienation, bargain, sale, conveyance, transfer and assignment of lands, tenements, hereditaments, and of goods and chattels, or any of them ... which shall at any time hereafter be had, made or executed, continued or devised of fraud, covin, collusion or guile, to the end, purpose or intent to delay, hinder, or defraud creditors or others of their just and lawful actions, suits, debts, accounts, damages, demands, penalties or forfeitures, shall be from henceforth as against the person or persons, or bodies politic or corporate, his, her or their successors, executors, administrators and assigns, and every one of them so intended to be delayed, hindered or defrauded, deemed, held, adjudged and taken to be utterly void, frustrate and of none effect....

This statute condemns fraudulent conveyances in which the owner of property seeks to place his property beyond the reach of creditors, or which operate to the prejudice of his creditors' legal or equitable rights. Pursuant to *Fla.Stat.* § 726.01, any transfer made to the end, purpose or intent to delay, hinder, or defraud creditors may be deemed by a court to be utterly void and of no effect.

The debtor argues that it is immaterial whether the transfer had the legal effect of delaying, hindering or defrauding creditors. The debtor asserts that the funds in the I.R.A. were exempt prior to the transfer and thus could not as a matter of law have been transferred in fraud of creditors. In support of this position the debtor relies on *Dean v. Heimbach,* 409 So.2d 157 (Fla. 1st DCA 1982), in which the court stated:

sale, gift or other disposition of property which is by law absolutely exempt from the payment of the owner's debts cannot be impeached by creditors as in fraud of their rights. Creditors have no right to complain of dealings with property which the law does not allow them to apply on their claims, even though such dealings are with a purpose to hinder, delay or defraud them. *Heimbach* at 159 citing

*Sneed v. Davis,* 135 Fla. 271, 184 So. 865 (1938).

Thus, before the Court can decide whether the "transfer" had the legal effect of delaying, hindering or defrauding a creditor, the Court must first determine if an I.R.A. is exempt under Florida law.

Florida has elected to have its own exemptions apply in bankruptcy cases rather than those exemptions contained in Bankruptcy Code Section 522. Therefore, the debtors' claim of exemption can only be granted if it falls within an exemption recognized under state law. The debtor claims that the I.R.A. accounts fall within the protection of *Fla.Stat.* § 222.14 which provides:

222.14 *Exemption of cash surrender value of life insurance policies and annuity contracts from legal process* The cash surrender values of life insurance policies issued upon the lives of citizens or residents of the state and the proceeds of annuity contracts issued to citizens or residents of the state, upon whatever form, shall not in any case be liable to attachment, garnishment or legal process in favor of any creditor of the person whose life is so insured or of any creditor of the person who is the beneficiary of such annuity contract, unless the insurance policy or annuity contract was effected for the benefit of such creditor.

Whether an I.R.A. account is an exempt annuity under *Fla.Stat.* § 222.14 has not been considered in a reported decision by any Bankruptcy or Florida Court. Additionally, the pertinent provision of the exemption statute was passed in 1978 with no debate, hence there is no legislative history by which to determine the Legislatures' intent. As the issue presented is one of first impression, the Court is mindful that:

It is not the role of the Court to determine whether the state exemption statutes are imprudent nor that the authority granted by Congress to state legislators is too broadly granted. Thus, the Courts' role is restricted to an interpretation of what exemptions have been enacted and to that extent recognize the debtors'

right thereto without a value judgment of whether the state legislature has spoken too liberally or too conservatively. If abuses to enacted exemptions are deemed to exist, the remedy is by means other than judicial legislation. *In re Worthington,* 28 B.R. 736 at 737 (W.D.Kentucky 1983).

The only statutory definition of the word "annuity" appears in *Fla.Stat.* § 238.01(16) where it states:

'Annuity' shall mean annual payments for life derived as provided in this Chapter from the accumulated contributions of the member.

This statutory definition is in accord with the bankruptcy decision of *In re Talbert,* 15 B.R. 536 (Bkrtcy.W.D.La.1981) in which that court defined an annuity as:

... a yearly payment of a certain sum of money granted to another in fee for life or for years, and chargeable only on the person of the grantor; or more briefly, as an agreement to pay a specified sum annually during the life of the annuitant ... In its broader sense it designates a fixed sum, granted or bequeathed, payable periodically, at aliquot parts of a year, at stated intervals, and not necessarily annually. *Talbert* at 537 citing 3A C.J.S. Annuities Section 2.

In conjunction with the above definitions the Court notes that 26 U.S.C. § 408, the Statute which authorizes the establishment of I.R.A. accounts, differentiates between "individual retirement accounts" and "individual retirement annuities." See *In re Howerton,* 21 B.R. 621 (Bkrtcy.N.D.Tex. 1982). Subsection (a) of § 408 states that, "For purposes of this section, the term 'individual retirement account' means a trust created or organized in the United States for the exclusive benefit of an individual or his beneficiaries...." Subsection (b) of § 408 provides that, "For purposes of this section, the term 'individual retirement annuity' means an annuity contract, or an endowment contract...." Subsections (c) and (d) of § 408 also treat "individual retirement accounts" and "individual retirement annuities" as distinct and separate

entities. See 26 U.S.C. § 408(c)(1); (d). As previously stated, both of the I.R.A. accounts created by the debtor were established pursuant to subsection (a) of § 408 and were "individual retirement accounts" rather than "individual retirement annuities" as contemplated by subsection (b) of § 408.

■ Based upon the foregoing, the Court finds that "individual retirement accounts", created in accordance with 26 U.S.C. § 408(a), and held in the form of funds on deposit in a bank account under the complete and unfettered control of the debtor are not "annuity contracts issued to citizens or residents of the state, upon whatever form," and are not unavailable to satisfy the claims of judgment creditors pursuant to *Fla.Stat.* § 222.14. Hence, the Court is not precluded from reaching the issue of the legal effect of the debtors' allegedly fraudulent transfer of funds from an individual retirement account to an individual retirement annuity. Other bankruptcy courts which have considered whether I.R.A. accounts are exempt under the Bankruptcy Code have reached a similar result. *In re Talbert,* 15 B.R. 536 (Bkrtcy.W.D.La. 1981); *In re Howerton,* 21 B.R. 621 (N.D. Tex.1982); *In re Lowe,* 25 B.R. 86 (Bkrtcy. D.S.C.1982).

■ Whether a transfer is made to the end, purpose or intent to delay, hinder, or defraud a creditor must be determined by the facts and circumstances of each particular case. *Kirk v. Edinger,* 380 So.2d 1336 (Fla. 5th DCA 1980). Here, approximately one month after judgment was entered against him, four days after he was subpoenaed for his deposition in aid of execution and one week before his scheduled deposition in aid of execution, this debtor transferred in excess of $28,000.00 from his I.R.A. accounts into a deferred annuity. The debtor was fully aware at the time of the transfer that he owed a judgment debt of more than $69,000.00. The debtor could have chosen numerous investment vehicles with high rates of return for the proceeds of his I.R.A., or he could have applied them toward payment of the Final Judgment, but instead he chose a rollover into a deferred annuity.

■ To find whether a party has acted fraudulently the Court must examine the conduct of the party in light of the facts and circumstances then existing. Certain indicia or badges of fraud can be used to infer an intention to delay, hinder, or defraud a creditor. *United States v. Fernon,* 640 F.2d 609 (5th Cir.1981). One of those indicia is whether there was "pending or threatened litigation against the transferor." *Fernon* at 613 citing *Money v. Powell,* 139 So.2d 702, 704 (Fla.App.1962). This debtor was clearly aware of pending litigation at the time of the "transfer" in which a judgment had been entered.

Upon a previous consideration of *Fla. Stat.* § 726.01 this Court stated that, "when the legal effect of a conveyance is to delay, hinder or defraud creditors, no matter what the actual intention may have been, it is fraud in law and the Courts are bound to so declare ... Thus, where the result is to hinder, delay or defraud creditors, the real motive of the parties is immaterial." *Matter of Flanzbaum,* 10 B.R. 420 at 423 (Bkrtcy.S.D.Fla.1981).

■ The Court finds that the aforementioned transfer of funds made by the debtor had the legal effect and result of hindering, delaying or defrauding creditors as provided by *Fla.Stat.* § 726.01 and *Matter of Flanzbaum,* 10 B.R. 420 (Bkrtcy.S.D.Fla. 1981).

Accordingly, the transfer of funds is void and of no effect and the trustee may withdraw the cash value of the debtors' I.R.A. subject to payment of the tax penalties imposed for early withdrawal of funds held in an I.R.A.

This opinion is not intended to address the issue of whether an "individual retirement annuity" that was established pursuant to 26 U.S.C. § 408(b) and that was untainted by a fraudulent transfer which occurred prior to its creation is exempt from the claims of creditors pursuant to *Fla.Stat.* § 222.14.

## COUNT III

### TURNOVER PROCEEDING PURSUANT TO 11 U.S.C. § 542

In the case of *In re Mace,* 4 BCD 94 (D.Or.1978) the court stated that:

> When the money is withdrawn from the I.R.A. by the trustee in bankruptcy it becomes taxable income. The Internal Revenue Service is not a party to this proceeding, and this court is in no position to determine whether such sum is taxable to the bankrupt or to the trustee and whether the 10% penalty is payable when the balance in the account passes to the trustee by operation of law and is withdrawn without benefit to the bankrupt and without consent. Since bankrupt has lost the whole account it would seem inequitable to burden him with this extra penalty. Should the Internal Revenue Service determine that the bankrupt must pay such penalty, the trustee is directed to return 10% of the I.R.A. to the bankrupt since payment by the bankrupt at a postbankruptcy income would unduly hamper his ability to make a fresh start.

Similarly, the court in *The Matter of Thomas Owens Brown,* 2 BCD 166 (S.D. Ohio 1976), held that the cash surrender value of an I.R.A. was not exempt under Ohio law and passed to the trustee, but enough cash must be left the bankrupt to pay the 10% tax assessment for early withdrawal of funds from an I.R.A. account.

In accordance with the Court finding that the transfer of funds is void and of no effect, the defendant, National Investors Life Insurance Company, will be directed to turnover to the trustee the cash surrender value of the debtors' I.R.A. subject to payment of the tax penalties imposed for early withdrawal of funds held in an I.R.A.

A separate Final Judgment will be entered in accordance with these Findings of Fact and Conclusions of Law.