**In re Joel I. KIMMEL, Debtor.**

**Bankruptcy No. 90–24577–BKC–SMW.**

United States Bankruptcy Court, S.D. Florida.

May 13, 1991.

Patricia Dzikowski, Miami Lakes, Fla., for Trustee.

Ira Gordon, Miami, Fla., for debtor.

Marika Tolz, Hollywood, Fla., Trustee.

ORDER SUSTAINING IN PART, AND OVERRULING IN PART, THE TRUSTEE'S OBJECTIONS TO THE DEBTOR'S CLAIMED EXEMPTIONS

SIDNEY M. WEAVER, Chief Judge.

THIS MATTER came before the Court on February 19, 1991, upon the trustee's objections to the debtor's claimed exemptions, and the Court having heard the testimony, examined the evidence presented, observed the candor and demeanor of the witnesses, considered the arguments of counsel, as well as the memoranda of law submitted by the parties, and being otherwise fully advised in the premises, hereby makes the following findings and conclusion of law:

This Court has jurisdiction over this matter as a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(B). On July 5 1990, the debtor, Joel I. Kimmel, filed a voluntary petition under Chapter 7 of the Bankruptcy Code. On his schedule B-4, the debtor claimed as exempt, pursuant to Florida law, his interest in the Joel I. Kimmel P.A. Money Purchase Pension Plan (the "pension plan"), and his interest in various life insurance policies, annuities, and IRA accounts. The debtor also claimed as exempt, pursuant to Section 522(b)(2)(B), his interest in the following property held by the debtor and his spouse as a tenancy by the entireties: a 1984 Jaguar automobile, real property located in Pocono County, Pennsylvania, and a Dean Whitter Reynolds Stock Account with a scheduled value of $39,000.00.

The schedules appended to the debtor's bankruptcy petition indicate that at the time the debtor filed his bankruptcy petition, both he and his wife were jointly obligated to several creditors. Schedule A-2 indicates that the debtor and his spouse are jointly liable on secured obligations owed to the two mortgagees of their homestead, Flagler Federal Savings and Loan and City Bank Savings. Schedule A-3 also indicates that the debtor and his spouse are guarantors on an unsecured obligation owed to Brighton Investment Partners in the amount of $24,000.00 and on an obligation to Sun Bank in the amount of $28,000.00. The primary obligations for these debts have been assumed by the transferee of the debtor's professional association. The debtor and his spouse are also liable on various credit card obligations which include accounts with Choice Visa (scheduled debt of $4,625.00) and Credit Card Center (scheduled debt of $1,011.00).

Additionally, on December 17, 1986, the debtor was involved in an automobile accident. As a result of the accident, a lawsuit was filed against the debtor in June of 1987. The debtor's spouse was added as a party defendant in April of 1990. However, as of the date of the hearing before this Court, the debtor's spouse had not yet been served with process. The plaintiffs in that action have filed a proof of claim against the debtor in the amount of $6,500,-

000.00. The lawsuit is still pending and no determination has been made as to either spouse's liability on the claim.

Prior to the filing of the petition the debtor made various transfers of assets. These transfers include the purchase of the following assets claimed as exempt by the debtor:

1. A North American Life Insurance Company IRA purchased by the debtor on April 10, 1987 using funds from a then-existing IRA account;

2. An Executive Life Insurance Company Single Premium Annuity purchased for the pension plan by the debtor on May 15, 1987 using existing pension funds;

3. Two Executive Life Insurance Policies with a combined cash value of $22,000.00 issued to the debtor on August 20, 1987; and,

4. A Keystone Life Annuity purchased for the pension plan in April of 1990 using proceeds from the sale of the debtor's personal automobile.

The trustee timely filed an objection to the debtor's claimed exemptions alleging that these transfers were fraudulent as against the creditors of this estate. The trustee's objection places at issue before the Court the debtor's claimed exemptions of the pension plan, the property owned by the debtor and his spouse as a tenancy by the entireties, and the property transfers made by the debtor after December 16, 1986, the date of the automobile accident.

### The Pension Plan

■ The debtor has claimed the pension plan as exempt under Florida law. Pursuant to § 522(b)(1) of the Bankruptcy Code, Florida has exercised its right to opt out of the federal exemptions. With regard to the exempt status of retirement or pension plan benefits, Florida Statute § 222.21(2)(a) provides as follows:

> Except as provided in paragraph (b), any money or other assets payable to a participant or beneficiary from, or any interest of any participant or beneficiary in, a retirement or profit-sharing plan that is qualified under s. 401(a), s. 403(a), s. 408, or s. 409 of the Internal Revenue Code of 1986, as amended is exempt from all claims of creditors of the beneficiary or participant.

Fla.Stat.Ann. § 222.21(2)(a) (West 1991). The debtor contends that the pension plan, being established since 1978 and funded yearly, is presently qualified under the Internal Revenue Code. At the scheduled hearing, the debtor introduced into evidence the testimony of a tax attorney who indicated that he reviewed the pension plan in 1986 and, in his opinion, the plan met the requirements of the Internal Revenue Code.

The trustee asserts that the claimed exemption of the pension plan should be disallowed on the grounds that the plan is not a qualified plan under the applicable provisions of the Internal Revenue Code. 26 U.S.C. § 401 *et seq.* The trustee contends that she has satisfied her initial burden of rebutting the prima facie effect of the debtor's claim of exemption by introducing evidence which shows the following: the professional association has virtually ceased all business operations; all employees other than the debtor and his spouse are no longer employed by the professional association and have received lump sum distributions from the plan, and the debtor has funded the plan with proceeds from the sale of personal assets.

The objecting party has the burden of proving that exemptions are not properly claimed by the debtor. Bankruptcy Rule 4003(c); *In re Wainsztein,* 116 B.R. 300 (Bankr.S.D.Fla.1990). The trustee has cited *In re McDonald,* 100 B.R. 598 (Bankr. S.D.Fla.1989), in support of her position that once the trustee has identified various defects in the pension plan, absent proof of the plan's current qualification under the Internal Revenue Code, the plan cannot be found to be exempt.

This Court finds that the trustee has not satisfied her initial burden of rebutting the prima facie effect of the plan's present qualification under the Internal Revenue Code. Firstly, the fact that the professional association has ceased most of its business operations and that all other employees have received their benefits, grounds

relied upon by the trustee as evidence of the plan's disqualification, are not dispositive on the issue of the plan's current qualification. *See In re Rosenbloom,* No. 90–22721–BKC–SMW, slip op. (Bankr.S.D.Fla. March 19, 1991). Secondly, the fact that personal assets were used to fund the plan is likewise not an indicia of disqualification. Section 401 of the Internal Revenue Code authorizes the funding of a pension benefit plan either by the employer or any employee. 26 U.S.C. § 401. Thus, the fact that the debtor contributed personal assets to the pension plan would not trigger disqualification.

■ The trustee also contends that the debtor may not claim the pension plan as exempt under Florida law. The trustee argues that even if the plan is qualified under the Internal Revenue Code, the plan is not entitled to the exemption under Florida law in that the Employee Retirement Income Security Act of 1974 ("ERISA") preempts Florida Statute § 222.21(2)(a).

The trustee relies on the United States Supreme Court decision in *Mackey v. Lanier Collection Agency & Service, Inc.,* 486 U.S. 825, 108 S.Ct. 2182, 100 L.Ed.2d 836 (1988), wherein the Court held that a Georgia state statute's express reference to an ERISA employee welfare benefit plan was sufficient to bring the state law within the federal law's preemptive reach under § 514(a) of ERISA. Section 514(a) of ERISA, 29 U.S.C. § 1144(a), provides in relevant part:

> "Except as provided in subsection (b) of this section, the provisions of this subchapter and sub-chapter 3 of this chapter shall supersede any and all state laws insofar as they may now or hereafter relate to any employment benefit plan described in § 1003(a) of this title and not exempt § 1003(d) of this title."

The Court reasoned that state laws which make "reference to" ERISA employee welfare benefit plans are laws that "relate to" those plans within the meaning of § 514(a) of ERISA. *Mackey,* 486 U.S. at 829–30, 108 S.Ct. at 2184–85, 100 L.Ed.2d at 843 (citing *Pilot Life Ins. Co. v. Dedeaux,* 481 U.S. 41, 47–48, 95 L.Ed.2d 39, 107 S.Ct.

1549 (1987)). The trustee argues that the reference to ERISA in § 222.21(2)(a) mandates preemption of the state statute because of the broad language of § 514(a) of ERISA. *In re Sheppard,* 106 B.R. 724 (Bankr.M.D.Fla.1989); *In re Schlein,* 114 B.R. 780 (Bankr.M.D.Fla.1990).

This Court has previously addressed the issue of ERISA's preemption of Florida Statute § 222.21(2)(a). *In re Martinez,* 107 B.R. 378 (Bankr.S.D.Fla.1989) (citing *In re Volpe,* 100 B.R. 840, 846–55 (Bankr.W.D.Texas 1989)); *In re Wines,* 113 B.R. 787 (Bankr.S.D.Fla.1990); *In re Rosenbloom,* No. 90–22721–BKC–SMW, slip op.; *See also In re Bryan,* 106 B.R. 749 (Bankr.S.D.Fla.1989) (Britton, J.); *In re Guervich,* No. 90–12037–BKC–AJC, slip op. (Bankr.S.D.Fla. November 1, 1990) (Cristol, J.). In *Martinez,* this Court specifically stated that:

> Florida Statute § 222.21(2)(a) only provides its residents with an exemption for profit-sharing benefits and pension plan money, but it does not regulate, directly or indirectly any matters dealing with ERISA's plan reporting, disclosure, participation, funding, vesting, benefit calculation or trustee's fiduciary responsibilities. Fla.Stat. § 222.21(2)(a) covers an area of law traditionally governed by the states and does not interfere with the field of employee pension plans now governed by federal law.

*Martinez,* 107 B.R. at 380.

It is the view of this Court that § 222.-21(2)(a) compliments ERISA's purpose of protecting pension money from attachment of creditors and therefore, absent a conflict between the state and federal law, there is no need for preemption. Because this Court is of the opinion that the two statutory provisions do not conflict, the Court finds that Fla.Stat. § 222.21(2)(a) is not preempted by ERISA and the debtor may properly claim the plan as exempt under Florida law.

### The Entireties Property Claimed As Exempt

■ Because the bankruptcy estate consists of all legal or equitable interests of the debtor in property as of the commence-

**228**

ment of the case, the debtor's interest in property held as a tenancy by the entireties is included in the estate. 11 U.S.C. § 541(a). However, Section 522(b)(2)(B) authorizes a debtor to exempt any interest in property in which the debtor had, immediately before the commencement of the case, an interest as a tenant by the entirety or joint tenant to the extent that such interest is exempt from process under applicable non-bankruptcy law. 11 U.S.C. § 522(b)(2)(B).

■ Under Florida law, property held as a tenancy by the entireties cannot be reached by a creditor to satisfy the individual debt of one spouse. *Sharp v. Hamilton,* 520 So.2d 9 (Fla.1988); *In re Blum,* 39 B.R. 897 (Bankr.S.D.Fla.1984); *In re Penrod,* 30 B.R. 326 (Bankr.S.D.Fla.1983). However, if both spouses are jointly obligated on the debt, then the joint creditor may reach the entireties property. *In re Blum,* 39 B.R. at 899. Where joint creditors exist, a debtor's equity in entireties property above the amount of the joint obligations qualifies for the Section 522(b)(2)(B) exemption. *In the Matter of Geoghegan,* 101 B.R. 329 (Bankr.M.D.Fla. 1989).

In this case, the schedules to the debtor's petition indicate that the debtor and his spouse are liable on several joint debts. The debtor and his spouse are primarily liable on two mortgage debts as well as various credit card obligations, and they are secondarily liable under guarantees given by them to the unsecured creditors of the debtor's professional practice. Nonetheless, the debtor asserts that the Court should disregard the joint obligations on the guarantees given to Brighton Investment Partners and Sun Bank since these obligations are now being paid by a subtenant who is the transferee of the debtor's professional practice.

■ The fact that a third party has assumed or paid off a joint obligation of the debtor and his spouse after a petition in bankruptcy has been filed does not retroactively make the entireties property exempt from process immediately before the case was filed. *In re Sefren,* 41 B.R. 747

(Bankr.D.Maryland 1984). The decisive moment for evaluating the entireties exemption is "immediately before the commencement of the case ..." 11 U.S.C. § 522(b)(2)(B); *In re Sefren,* 41 B.R. at 749. Even though the joint obligations to Brighton Investment Partners and to Sun Bank are now being paid by a third party, schedule A–3 clearly shows that the debtor and his spouse were jointly liable on these debts at the time of the filing of the petition. The assets listed by the debtor as being held under a tenancy by the entireties are not exempt from the process of these joint creditors.

To the extent that the debtor and his spouse were jointly liable on debts at the time of the filing of the petition to creditors who could have levied on the entireties property pursuant to Florida law, the Court holds that all property in which the debtor has an interest in as a tenant by the entireties is declared to be property of the estate and subject to administration by the trustee under § 363(h) of the Bankruptcy Code. The balance of the debtor's entireties property that exceeds joint claims which could have been reduced to judgment and levied upon at the time of the filing of the petition is exempt from process under Florida law.

### The Transfers

■ Pursuant to Section 544(b) of the Bankruptcy Code, the trustee has the power of an actual unsecured creditor and if a certain transaction can be attacked by an unsecured creditor applying state law, that same transaction may also be challenged by the trustee. *In re Gefen,* 35 B.R. 368 (Bankr.S.D.Fla.1984); *In re Gherman,* 103 B.R. 326 (Bankr.S.D.Fla.1989).

The trustee argues that all transfers of assets made by the debtor after December 17, 1986, the date of the automobile accident, may be avoided as fraudulent transfers under Florida law. The applicable statute at the time of the transfers was Florida Statute § 726.01, which provided in pertinent part:

"Every feoffment, gift, grant, alienation, bargain, sale, conveyance, transfer and assignment of lands, tenements, hereditaments, and of goods and chattels, or

any of them ... which shall at any time hereafter be had, made or executed, contrived or devised of fraud, covin, collusion or guile, to the end, purpose or intent to delay, hinder or defraud creditors or others of their just and lawful actions, suits, debts, accounts, damages, demands, penalties or forfeitures, shall be from hence forth as against the person or persons, or bodies politic or corporate, his, her or their successors, executors, administrators and assigns, and every one of them so intended to be delayed, hindered or defrauded, deemed, held, adjudged and taken to be utterly void, frustrate and of none effect ..."

Fla.Stat.Ann. § 726.01 (West 1991) (Repealed by Laws 1987, eff. Jan. 1, 1988.)

■ A debtor can only commit fraud on his creditors by disposing of such property as the creditor would have a legal right to look to for satisfaction of his claim. *Dean v. Heimbach*, 409 So.2d 157 (Fla. 1st DCA 1982). The court in *Dean v. Heimbach* (quoting *Sneed v. Davis*, 135 Fla. 271, 184 So. 865 (1938)) stated that:

A sale, gift or other disposition of property which is by law absolutely exempt from the payment of the owner's debts cannot be impeached by creditors as in fraud of their rights. Creditors have no right to complain of dealings with property which the law does not allow them to apply on their claims, even though such dealings are with a purpose to hinder, delay or defraud them.

*Heimbach*, at 159.

■ Whether a particular transfer is made to the end, purpose or intent to delay, hinder, or defraud a creditor is to be determined by the facts and circumstances of each case. *In re Strehlow*, 84 B.R. 241 (Bankr.S.D.Fla.1984); *In re Gefen*, 35 B.R. 368 (Bankr.S.D.Fla.1984). Hence, this Court must look to the facts and circumstances surrounding each of the transfers to determine if the transfers were fraudulent as against the creditors of this estate.

■ In the first transfer, on April 10, 1987, the debtor used the funds of a then-existing IRA account to purchase a North American Life Insurance Company IRA account. The State of Florida has legislated that funds held in an IRA account are exempt from the claims of creditors. Fla. Stat.Ann. § 222.21(1) (West 1991); *In re Horath*, 116 B.R. 835 (Bankr.M.D.Fla. 1990). This exemption applies in any proceeding commenced on or after October 1, 1987. Fla.Stat.Ann. § 222.21(2)(c) (West 1991). Therefore, the April 10, 1987 purchase of the IRA represented the transfer of funds from one form of exempt asset to another. As a result, the trustee's objection to the claimed exemption of the North American Life Insurance Company IRA account is overruled.

■ The same reasoning is dispositive of the May 15, 1987 transfer where the debtor used existing pension funds to purchase an Executive Life Insurance Company Single Premium Annuity for the pension plan. Since the Court has found the pension plan to be exempt, the transfer represented the conversion of one exempt asset into another. If the transfer had not taken place, the trustee could not have looked to the pension plan assets to satisfy creditors claims. Therefore, the transfer did not have the effect of hindering, delaying or defrauding creditors and the trustee's objection to the claimed exemption of the Executive Life Insurance Company Single Premium Annuity is overruled.

■ The trustee also argues that the debtor's August 20, 1987 purchase of two life insurance policies may be avoided as a fraudulent transfer. The trustee contends that at the time of the August 20, 1987 purchase, the debtor was aware that the personal injury lawsuit had been filed against him and that this transfer evinces the debtor's intent to place his assets beyond the reach of creditors.

The trustee relies on this Court's opinion in *In re Gefen*, 35 B.R. 368, a case decided prior to the enactment of Fla.Stat. § 222.-21(1), wherein this Court held that the trustee could avoid the debtor's transfer of $28,000.00 from an IRA account to a deferred annuity contract. Because § 222.-21(1) had not yet been enacted by the legislature, the Court was first called upon to

determine whether the debtor's IRA account qualified as an exempt annuity under Fla.Stat. § 222.14. This Court concluded that the debtor exercised unfettered dominion and control over the account and the debtor was, therefore, precluded from claiming the IRA as an exempt annuity contract under Fla.Stat. § 222.14. *In re Gefen,* 35 B.R. at 372.

Having determined that the IRA was not an exempt asset, the Court in *Gefen* was then called upon to determine whether the transfer was made with the intent to hinder, delay or defraud creditors. In *Gefen* the debtor had knowledge of pending litigation. One month after the judgment was entered in the litigation, four days after the debtor was subpoenaed for a deposition in aid of execution, and one week before his scheduled deposition, the debtor transferred the $28,000.00 from the IRA into the deferred annuity. This Court concluded that the transfer was done to purposefully shield assets, and with the intent to hinder, delay and defraud the judgment creditor.

The debtor relies on *In re Levine,* 40 B.R. 76 (Bankr.S.D.Fla.1984) for the proposition that the mere act of converting property from non-exempt to exempt status, without more, is neither a badge of fraud nor prohibited by the Bankruptcy Code. In *Levine,* litigation was instituted against the debtor. During the pendency of the litigation, the debtor received a payment in the amount of $100,000.00 when he elected to withdraw from an investment commitment. On the advice of his attorney, the debtor applied the money towards the mortgage debt on his homestead. Four days later the debtor filed a petition under Chapter 7 of the Bankruptcy Code. The trustee objected to the homestead exemption claimed by the debtor to the extent of $100,000.00, arguing that the payment to the mortgagee was fraudulent as to other creditors of the estate.

In overruling the trustee's objection in *Levine,* this Court drew particular reference to the recognized right of a debtor to engage in pre-bankruptcy planning. The Court noted that the Bankruptcy Code recognizes a debtor's right to transfer property from non-exempt to exempt status. Such transfers, the Court stated, are not *per se* fraudulent as to creditors. The Court noted that the debtor had been advised by counsel that the payment could be applied towards the mortgage debt on the homestead thereby maximizing the use of the available exemptions. Absent a showing of an intent to hinder, delay or defraud creditors, the transfer could not be avoided.

In the case at hand, the debtor was aware that a personal injury suit had been filed against him in June of 1987. However, at the time of the August 20, 1987 transfer, and, in fact, as of the date of the hearing before this Court, no determination had been made as to the debtor's liability on the claim. The debtor was insured at the time of the accident. Additionally, the debtor engaged in a pattern financial planning dating back to 1978, the date the pension plan was established. The evidence indicates that the debtor, on the advice of a financial planner, continued this practice after the date of the accident. Based on these facts, the Court finds that the two life insurance policies were not purchased with the intent to hinder, delay or defraud creditors and the trustee's objection to the claimed exemption is overruled.

The same analysis is applicable to the April, 1990 transfer where the debtor sold an automobile and purchased a Keystone Life Annuity on behalf of the plan. This transfer followed the same pattern of financial planning established by the debtor prior to the date of the accident. Therefore, the Court finds that the purchase of the annuity may not be avoided by the trustee and the trustee's objection is overruled.

Based on the foregoing it is hereby:

ORDERED AND ADJUDGED as follows:

1. The trustee's objection to the claimed exemption of the pension plan is overruled.

2. The trustee's objection to the claimed exemption of the property held by the debtor as a tenant by the entirety is sustained. The debtor's interest in the property held

as tenancy by the entireties is property of the estate and subject to administration by the trustee, to the extent of the claims of the joint creditors who could have levied on the entireties property pursuant to Florida law. The balance of the debtor's entireties property that exceeds the claims of joint creditors which could have been reduced to judgment and levied upon at the time of the filing of the petition is exempt from process under Florida law.

3. The trustee's objection to the claimed exemption of the North American Life Insurance Company IRA purchased by the debtor on April 10, 1987, is overruled.

4. The trustee's objection to the claimed exemption of the Executive Life Insurance Company Single Premium Annuity purchased by the debtor on May 15, 1987, is overruled.

5. The trustee's objection to the claimed exemption of the Executive Life Insurance Policy issued to the debtor on August 20, 1987, is overruled.

6. The trustee's objection to the claimed exemption of the Keystone Annuity purchased by the debtor in April, 1990, is overruled.

DONE AND ORDERED.