**PUBLISH**

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 96-2803
_____

D. C. Docket No. 96-60-CIV-T-23B
Bankr. No. 91-327-8P7


IN RE: MYRON LEVINE, a.k.a. Mike Levine; JACQUELINE P. LEVINE, a.k.a. Jackie Levine,

                                        Debtors.

MYRON LEVINE, a.k.a. Mike Levine; JACQUELINE LEVINE, a.k.a. Jackie Levine,

                                        Plaintiffs-Appellants,

     versus


CHARLES WEISSING, Trustee,

                                        Defendant-Appellee.

_____

Appeal from the United States District Court
for the Middle District of Florida
_____

**(February 3, 1998)**


Before BIRCH, Circuit Judge, RONEY, Senior Circuit Judge, and O'KELLEY*, Senior District Judge.

_____

*Honorable William C. O'Kelley, Senior U.S. District Judge for the Northern District of Georgia, sitting by designation.

BIRCH, Circuit Judge:

This appeal requires that we examine and resolve several issues relating to bankruptcy law as applied in Florida. Specifically, we must decide whether (1) the conversion of funds from non-exempt to exempt status through the purchase of annuities constitutes a "transfer" for purposes of state law pertaining to fraudulent transfers; (2) the act of converting or "transferring" funds from non-exempt to exempt status can be isolated analytically from the result of that transfer; and (3) Florida law provided for an action to set aside fraudulent conveyances otherwise deemed exempt from the reach of creditors prior to 1993. In addition, we must decide whether, under the facts of this particular case, the trustee's action to set aside a fraudulent transfer is barred by the Bankruptcy Code's statute of limitations and whether the bankruptcy court's factual determinations are clearly erroneous. For the reasons that follow, we conclude that the district court properly affirmed the bankruptcy court's order.

## I.  BACKGROUND

The debtors in this action, Myron and Jacqueline Levine (the "Levines"), filed a voluntary petition for relief under Chapter 7 of the United States Bankruptcy Code in 1991.  Charles Weissing (the "trustee") was appointed trustee of the bankruptcy estate and, shortly thereafter, filed a complaint pursuant to Fla. Stat. § 726.105 to set aside as fraudulent the transfer of approximately $440,000.00 of non-exempt assets to several insurance companies for the purchase of annuities which are exempt from the claims of creditors under Florida law.  The trustee alleged that these transfers were effected with the intent to hinder, delay, or defraud a known creditor, James A. Miller.  It is undisputed that, several years prior to the Levines' declaration of bankruptcy, Miller had instituted an action for fraud against the Levines in the state of California relating to the sale of property by the Levines to Miller.  The precise request for relief as articulated in the trustee's complaint is critical to our disposition of this case and, therefore, is reproduced in relevant part:

> Pursuant to the provisions of Florida Statute Section 726.108 entitled remedies of creditors, the Court may avoid a transfer found to be fraudulent pursuant to the provisions of Florida Statutes Section 726.105 to the extent necessary to satisfy a creditor's claim. In addition, subject to applicable principles of equity and in accordance with applicable Rules of Civil Procedure, a creditor may obtain an injunction against further disposition by the Debtor or a transferee, or both, of the assets transferred, or may obtain any other relief the circumstances may require . . . .
>
> . . . .
>
> WHEREFORE, the Trustee prays that this Court enter a preliminary and permanent injunction preventing FINANCIAL BENEFIT LIFE INSURANCE COMPANY . . . [et al.] from making further distributions to or for the Debtors, and further preventing the Debtors from accepting any distributions from FINANCIAL BENEFIT LIFE INSURANCE COMPANY . . . [et al.].

Exh. A at 3-4 and 7.

The bankruptcy court initially dismissed the complaint on the ground that, in defining the parameters of a "transfer" of funds, both the Bankruptcy Code and Florida law contemplated that the transferor and the transferee necessarily be two distinct, identifiable

4

parties; as a result, according to the bankruptcy court's reasoning, there had been no transfer of funds that could be set aside as fraudulent in this instance. More specifically, the bankruptcy court determined that a transfer had not occurred "because the Debtors still retain control and ownership of the assets acquired with funds they obtained from disposition of their nonexempt assets, and the fact that this conversion effectively removed the former assets from the reach of the creditors is of no consequence." In re Levine, 139 B.R. 551, 553 (Bankr. M.D. Fla. 1992). The district court, however, reversed the bankruptcy court's order dismissing the case and concluded not only that there had been a transfer but, in addition, that the trustee had stated a cause of action for fraudulent transfer of funds. See R1-13 at Exh. 1.

On remand, the bankruptcy court held an evidentiary hearing to ascertain whether the challenged annuities had been purchased with fraudulent intent. In a memorandum order, the bankruptcy court found that three of the named insurance companies had actually

repaid to the debtors the full amount of the funds transferred according to the annuity contracts, Exh. B at 16, and thus could not be held legally liable for the amounts received pursuant to the purchase of those contracts. In addition, the court rejected any personal liability on behalf of Financial Benefit Life Insurance Company ("Financial") regarding annuity contracts purchased by the debtors from that institution. The court further determined, however, that the purchase of annuities from Financial between June 1990 and September 1990 was motivated by "the specific intent to remove non-exempt properties from the reach of creditors by converting the proceeds of the sale to exempt properties." Exh. B at 14. The court noted that the Levines had discussed the exempt status of annuities with an estate-planning lawyer knowing that Miller likely would obtain a judgment against them[1] and, within a short period of time, liquidated their stock portfolio and purchased an annuity contract

---

[1]It is undisputed that the bankruptcy court erred in stating that, at the time the Levines consulted a lawyer regarding the challenged annuities, Miller already had obtained a judgment against them.

from Financial. Consistent with this determination, the court set aside the annuities purchased from Financial, ordered that the balance of funds in the annuity contracts be transferred back into the bankruptcy estate, and enjoined any further distributions to the Levines from these particular transferred funds. This decision was affirmed summarily by the district court.

On appeal, the Levines ask that we reverse the district court's order affirming the bankruptcy court's decision to set aside as fraudulent those transfers that occurred between June and September of 1990 to Financial. The Levines base their challenge to the bankruptcy court's decision on several contentions: First, they reassert their argument, presented previously to the bankruptcy court and the district court, that the conversion of funds from non-exempt to exempt status does not constitute a transfer and, thus, cannot be attacked under Florida law. Second, they posit that, even if the conversion in question was a transfer, the funds currently are exempt under Florida law and Fla. Stat. 726.105 cannot be used to

7

collaterally challenge the exempt status of these annuities. Third, they suggest that specific non-retroactive statutory amendments to Florida law enacted in 1993 address precisely the circumstances presented in this case; consequently, we can infer that the Florida legislature had not provided a remedy for the alleged violation at issue prior to the enactment of these amendments. Fourth, they contend that the trustee did not contest the exempt status of the annuities within the applicable statute of limitations time period. Fifth, they argue that the bankruptcy court's factual determinations are clearly erroneous. We address in turn each of the Levines' arguments.

## II. DISCUSSION

We review the bankruptcy court's factual findings under the clearly erroneous standard. General Trading v. Yale Materials Handling Corp., 119 F.3d 1485, 1494 (11th Cir. 1997). We review

determinations of law, whether from the bankruptcy court or the district court, <u>de</u> <u>novo</u>. <u>Id.</u>

## A. Was this a transfer?

As noted, the Levines argue that, because they essentially transferred money to themselves by altering the status and form of their own assets, there was no transfer for purposes of the applicable Florida law.

We disagree. Florida law provides the following definition of a "transfer":

> "Transfer" means every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with an asset or an interest in an asset, and includes payment of money, release, lease, and creation of a lien or other encumbrance.

Fla. Stat. § 726.102(12). Although the Florida legislature has never explicitly defined an "annuity," the Florida Supreme Court, in a case certified by our court, has looked to various decisions of bankruptcy courts to provide a useful definitional guide in the absence of a clear

legislative directive; to this end, that court has defined an annuity as, inter alia, "a form of investment which pays periodically during the life of the annuitant or during a term fixed by contract rather than on the occurrence of a future contingency . . . ." In re McCollam, 986 F.2d 436, 438 (11th Cir. 1993) (emphasis added). Borrowing directly from Florida's statutory language regarding the scope of the term "transfer," we readily conclude that, in purchasing an annuity, the purchaser voluntarily parts with an interest in an asset in exchange for a guaranteed monetary return on his investment; indeed, the purchase of an annuity is a contractual arrangement whereby each party is bound by specific rights and obligations. Although the record does not reveal the precise terms of the annuities at issue here, virtually all annuity contracts provide that the annuitant will be permitted to withdraw amounts of money in pre-determined intervals and achieve a measure of return at a fixed interest rate in exchange for placing his assets in the hands of a financial institution -- in this case, an insurance company -- that will invest his money. Similarly,

an annuitant generally may not withdraw money at a greater amount or with greater frequency than what has been specified in the annuity contract without incurring financial penalties.  See Fla. Stat. § 625.121(6)(c)(3)(e) (establishing permissible annuity plans under Florida law regarding the rate at which a policyholder may withdraw funds without incurring penalty); Werner v. Dept. of Ins., 689 So.2d 1211, 1212 (Fla. Dist. Ct.) ("[agent] did not inform [plaintiff] that certain interest would be forfeited if she withdrew more than ten per cent of the principal in any one of the first seven years of the annuity's existence."), review denied, 698 So.2d 849 (1997). Consequently, although an individual who purchases an annuity remains the technical owner of the asset, he does not retain total control over that asset and does not have unfettered access to the full amount of his own "property."  As a result, the purchase of an annuity, as in the instant action, does constitute a "transfer" for purposes of Florida law regarding fraudulent transfers. The Levines, therefore, did transfer assets from non-exempt to exempt status in

11

purchasing annuities from Financial during the time period identified

by the bankruptcy court.[2]

_____

[2]It is interesting to note that, in a case involving a trustee's objection to a debtor's claimed exemption of an annuity purchased prior to the filing of a Chapter 7 bankruptcy petition, the same bankruptcy court that originally had decided, in the Levines' case, that such a purchase did not constitute a "transfer" concluded:

> [W]hen the Debtor's right to exemption is challenged on the grounds that the Debtor converted non-exempt property to exempt property, it is appropriate to inquire into the circumstances surrounding the transfer, as there is substantial and respectable authority to support the denial of the Debtor's right to exemptions upon a showing by extrinsic evidence that the Debtor converted non-exempt property into exempt property with the specific intent to defraud his or her creditors. . . .
> . . . .
> As a final comment, it should be noted that this Court is receding in part from its holding in In re Levine, supra, that converting non-exempt property to exempt property is not per se fraudulent and conversion of such property for the purpose of placing such property out of the reach of creditors will not deprive a debtor of an exemption to which the debtor would otherwise be entitled. After further research and consideration, this Court is satisfied that a showing that the conversion of a non-exempt asset into an exempt asset for the specific purpose of placing the asset out of the reach of creditors is sufficient to deprive a debtor of his right to claim that property as exempt.

In re Schwarb, 150 B.R. 470, 472-7 (Bankr. M.D. Fla. 1992). Although Schwarb concerns the validity of a claimed exemption rather than the transfer that gave rise to the exempt asset, it nonetheless provides valuable insight into the bankruptcy court's striking shift in perspective regarding a critical question in this case -- that is, whether the Levines' purchase of annuities could be characterized as a "transfer" for purposes of bankruptcy law prohibiting fraudulent transfers.

## b. Has Fla. Stat. § 726.105 properly been invoked?

The Levines further argue that, assuming that a transfer did occur in this instance, the annuities are now exempt and cannot be contested collaterally through §726.105. That statutory provision states, in relevant part:

> (1) A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:
>
> (a) With actual intent to hinder, delay, or defraud any creditor of the debtor; or
>
> (b) Without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor:
>
> 1. Was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or
>
> 2. Intended to incur, or believed or reasonably should have believed that he or she would

> incur, debts beyond his or her ability to pay as
> they became due.

Fla. Stat. § 726.105(1). The Levines posit that, notwithstanding the language of this statutory provision concerning fraudulent transfers or transactions, Florida law historically has held legally-created exemptions to be sacrosanct and has declined to place an exempt financial instrument or arrangement –regardless of the motivation of the debtor – within the reach of creditors. The Levines are correct that such a body of decisional law has evolved in Florida, although within the context of the constitutionally-protected homestead exemption rather than the statutorily-created exemption for annuities. In Hill v. First Nat'l. Bank of Marianna, 84 So. 190, 193 (1920), for example, the Florida Supreme Court refused to subject property protected by the homestead exemption to the payment of debts, noting that to do so "would permit defendants to do indirectly what they are enjoined from doing directly, and thereby defeat the beneficial purpose of the law." Similarly, in Heddon v. Jones, 154

So. 891, 891-92 (1934), the Florida Supreme Court again declined to interfere with the homestead exemption regardless of the debtor's intent:

> The fact that the appellee may have moved on the homestead property prior to judgment for the express purpose of 'homesteading' it is not legal fraud which per se affords ground for holding the homestead claim subordinate to the lien of a judgment rendered in a suit pending prior to the time the homestead character attached. Nor is it material that the property later claimed as a homestead was held out as a possible asset upon which credit was obtained before the homestead attempt was perfected.

See also West Fla. Grocery Co. v. Teutonia Fire Ins. Co., 77 So. 209, 212 (1917) (stating that the homestead exemption "applies not only to formal and technical process, but to any judicial proceedings, of law or in equity, which seek the appropriation of the property to the payment of debts.").

The trustee, on the other hand, points to more recent decisional law applying §726.105 specifically to bankruptcy cases analogous

to this one: In re Gefen, 35 B.R. 368 (Bankr. S.D. Fla. 1984), for instance, concerned a finding by the bankruptcy court that the debtor had transferred money from an individual retirement account into an annuity for the purpose of defrauding a creditor.  In upholding the bankruptcy court's application of § 726.105, the district court in Gefen noted that

> [t]he debtor could have chosen numerous investment vehicles with high rates of return for the proceeds of his I.R.A., or he could have applied them toward payment of the Final Judgment, but instead he chose a rollover into a deferred annuity. . . .
> . . . .
> The Court finds that the aforementioned transfer of funds made by the debtor had the legal effect and result of hindering, delaying, or defrauding creditors . . .
> Accordingly, the transfer of funds is void and of no effect and the trustee may withdraw the cash value of the debtors' I.R.A . . . .

Gefen, 35 B.R. at 372; see also In re Marks, 131 B.R. 220, 222 (S.D. Fla. 1991) (rejecting as lacking merit debtor's contention that debtor's "termination of his Keogh accounts and his subsequent use

16

of liquidated funds to purchase the two annuity contracts" did not constitute a transfer subject to Florida prohibition on fraudulent transfers.), aff'd, 976 F.2d 743 (11th Cir. 1992).

We note that the sources of authority cited by the Levines and the trustee are, to a degree, in tension: Florida law appears to view exemptions (or more specifically, the homestead exemption, not at issue in this case) as inviolable, regardless of their provenance; Florida courts also, however, have refused to countenance the purchase of an exempt instrument such as an annuity for the purpose -- or with the result -- of defrauding creditors to a bankruptcy estate.

While acknowledging this tension, we conclude that the Gefen case more closely resembles the circumstances with which we are confronted in the instant action and effectively should govern our resolution of this issue.  Although we must respect the reluctance of Florida courts to interfere with exempt assets, we also must be guided by those courts that have relied on the unambiguous

17

language of § 726.105 to set aside transfers from non-exempt to exempt status when such transfers were effected in order to defraud creditors. The Levines' citation to precedent regarding the sacred nature of the homestead exemption, while noteworthy, ultimately has little bearing on this case. As is apparent from the complaint, the trustee does not challenge the exempt status of the annuities and does not seek to reverse any rulings as to the exemption; rather, as articulated repeatedly by the trustee, the thrust of this action is to set aside the transfer itself and return the transferred funds to the bankruptcy estate. Although the Levines correctly observe that the distinction between setting aside a transfer as fraudulent and declaring an otherwise exempt asset to be non-exempt achieves, from their perspective, the same outcome, it is also a very real distinction that is provided for by Florida law, as embodied in § 726.105, and that has been applied by both Florida bankruptcy courts and federal district courts. We similarly find that there exists an arguable distinction between the act of transferring funds from

non-exempt to exempt status and the exempt nature of the transferred funds. Where, as in this case, there is an allegation that the transfer itself was fraudulent and should therefore be set aside (as opposed to an allegation that the transfer was fraudulent and the assets therefore should be declared non-exempt), § 726.105 may properly be invoked.

## c. Legislative amendments

The Levines next argue that, because a 1993 amendment to the Florida Code anticipates precisely the circumstance present in this case, we necessarily must infer that, prior to the enactment of this amendment, the legislature had not provided a remedy for this type of fraud. The amendment to which the Levines refer indeed addresses the conversion of an asset from non-exempt to exempt status and states, in pertinent part:

> Any conversion by a debtor of an asset that results in the proceeds of the asset becoming exempt by law from the claims of a

creditor of the debtor is a fraudulent asset conversion as to the creditor, whether the creditor's claim to the asset arose before or after the conversion of the asset, if the debtor made the conversion with the intent to hinder, delay, or defraud the creditor.

Fla. Stat. § 222.30(2).

Although the language of this provision, enacted after the events giving rise to this action occurred, embraces the allegations set forth in the trustee's complaint, we decline to assume or infer from this fact alone that, prior to the amendment's enactment, the Florida legislature did not intend a remedy to exist for fraudulent transfer of funds from non-exempt to exempt status; in fact, at least one court has held that, prior to the adoption of § 222.30, the statutory provision at issue in this case, § 726.105, governed any type of fraudulent transfer including those transfers resulting in exempt funds. In re Davidson, 178 B.R. 544 (S.D. Fla. 1995), involved the debtors' transfer of funds held in a non-exempt joint bank account to an exempt annuity one day before final judgment

entered against the debtors in a pending lawsuit. In reversing the bankruptcy court's order overruling the trustee's objection to the debtors' claimed annuity exemption, the district court noted:

> Because Section 222.30 only applies to a transfer or conversion occurring on or after October 1, 1993, and the Annuity purchase in this case occurred prior to this date, the Bankruptcy Court concluded that:
>> At the time this case was initiated, there was no Florida law providing that a debtor forfeits her right to an exemption as a consequence for fraudulent conduct.
>> This legal conclusion is incorrect in light of
> the following statutes. Florida Statutes § 726.105 and § 726.108, effective at the time of the Annuity purchase, would appear to enable Ameritrust to avoid the transfer or Annuity purchase.

Id. at 552 (internal citation omitted).

We conclude, as did the district court in Davidson, that prior to the adoption of § 222.30, § 726.105 governed allegations of fraudulent transfers regardless of whether the challenged transfers resulted in exempt assets. Given the tension in the decisional law,

21

identified earlier, concerning the absolute nature of exemptions and the possibility of distinguishing the act of transferring funds from their eventual exempt status, thereby avoiding transfers that create exemptions we construe § 222.30 to be an effort by the legislature to provide a clearer, more direct remedy to fraudulent transfers of the sort alleged in this case. Moreover, § 222.30 expressly adopts the definitional section from § 726 "unless the application of a definition would be unreasonable." Fla. Stat. § 222.30(1). This explicit cross-referencing of the two statutory provisions further suggests not only that they are to be read in tandem but, more importantly, that § 222.30 is a subset of the causes of action outlined in § 726. We determine that the legislative amendment embodied in § 222.30 does not preclude reliance on § 726.105 regarding causes of action that accrued prior to the amendment's enactment.

**d. Statute of Limitations**

We briefly address the Levines' contention that the trustee is barred from contesting the exempt status of the annuities by virtue of the applicable statute of limitations. The Federal Rules of Bankruptcy Procedure mandate that objections to listing of property to be claimed as exempt must be filed within thirty days after the creditors' meeting. Fed. R. Bank. P. 4003. As previously noted, however, the trustee in this action does not seek to contest the exemptions per se; rather, this is an adversary action filed pursuant to 11 U.S.C. § 544, which permits the trustee to "avoid any transfer of the property of the debtor . . . ." 11 U.S.C. § 544(a). The Bankruptcy Code provides that an adversary action filed under this provision may be filed within two years after the entry of the order for relief. See 11 U.S.C. § 546(a)(1)(A). It is undisputed that the trustee has complied with the two-year limitation on the filing of this action. Having determined that the statute of limitations governing objections to exemptions does not control this case, we conclude

that the trustee's action to contest the transfer of funds is not time-barred.

## e. Factual determinations

Finally, our independent review of the record indicates that the bankruptcy court did not clearly err in finding that the Levines purchased the annuities in question with the intent to hinder or defraud a known creditor. In determining whether a debtor actually intended to hinder, delay, or defraud a creditor, a bankruptcy judge may consider, <u>inter</u> <u>alia</u>, whether:

> (a) The transfer or obligation was to an insider.
> (b) The debtor retained possession or control of the property transferred after the transfer.
> (c) The transfer or obligation was disclosed or concealed.
> (d) Before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit.
> (e) The transfer was of substantially all the debtor's assets.
> (f) The debtor absconded.
> (g) The debtor removed or concealed assets.
> (h) The value of the consideration received by the debtor was reasonably equivalent to the

value of the asset transferred or the amount of the obligation incurred.

(I) The debtor was insolvent or became insolvent shortly after the transfer was made or the obligation incurred.

(j) The transfer occurred shortly before or shortly after a substantial debt was incurred.

(k) The debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor.

Fla. Stat. § 726.105(2).

Based on the record evidence and testimony provided at an evidentiary hearing, there exists sufficient evidence to affirm that the Levines converted non-exempt assets to annuities that are exempt under Florida law shortly after learning that such a transfer would be beyond the reach of Miller, a creditor whom the Levines had reason to believe likely would prevail in a lawsuit filed against them. Giving due regard to the bankruptcy court's opportunity to observe and evaluate the credibility and demeanor of the witnesses, see In re Englander, 95 F.3d 1028, 1030 (11th Cir. 1996) (per curiam), cert. denied, __ U.S. __, 117 S. Ct. 1469, 137 L. Ed. 2d 682 (1997), we

conclude that the bankruptcy court's factual determinations are supported by the record and, therefore, are not clearly erroneous.

## III. CONCLUSION

In this bankruptcy action, the Levines contend that the bankruptcy court erred in both determining that the transfer of funds from non-exempt to exempt status through the purchase of annuities constituted an attempt to defraud a known creditor and avoiding that transfer; they further contend that the district court erred in affirming that decision. We hold that (1) the Levines' purchase of annuities was a "transfer" under the pertinent Florida law; (2) Fla. Stat. § 726.105 properly was invoked and relied upon to challenge the nature of the transfer; (3) the amendment to Florida's statutory scheme regarding the fraudulent conversion of assets embodied in Fla. Stat. § 222.30 does not necessarily suggest that no remedy for transfer of assets from non-exempt to exempt status for the purpose of defrauding a creditor existed prior to the enactment of the

amendment in 1993; (4) the trustee is not precluded from filing this adversarial action by virtue of the statute of limitations pertaining to actions to contest claimed exemptions; and (5) the bankruptcy court's factual determinations are not clearly erroneous. Accordingly, we AFFIRM.