**In re Raymond DECKER and Helen Decker, Debtors.**

**BARNETT BANK OF PASCO COUNTY, Plaintiff,**

v.

**Raymond DECKER and Helen Decker, Defendants.**

**Bankruptcy No. 88–1570–8P7.
Adv. No. 88–431.**

United States Bankruptcy Court,
M.D. Florida,
Tampa Division.

May 25, 1989.

Larry Foyle, Tampa, Fla., for plaintiff.

Jack H. Weech, Jr., Lakeland, Fla., for defendants.

## FINDINGS OF FACT, CONCLUSIONS OF LAW AND MEMORANDUM OPINION

ALEXANDER L. PASKAY, Chief Judge.

THIS IS a Chapter 7 liquidation case, and the matters under consideration are several claims set forth in a seven-count Complaint filed by Barnett Bank of Pasco County (Plaintiff) against Raymond and Helen Decker (Debtors). In Count I, the Plaintiff seeks an Order from this Court declaring that the obligation allegedly due and owing by the Debtors to the Plaintiff shall be declared to be nondischargeable pursuant to 11 U.S.C. § 523(a)(2)(B) on the basis that the Debtors obtained money by submitting a false financial statement to the Bank. In Count II the Plaintiff seeks an Order denying the Debtors' general bankruptcy discharge pursuant to 11 U.S.C. § 727(a)(2) of the Bankruptcy Code. This claim is based on the allegation that the Debtors with intent to hinder, delay or defraud a creditor, transferred or concealed property within one year before the date of the filing of the Petition, or alternatively, concealed property of the estate after the date of the filing of the Petition. In Count III Plaintiff seeks a denial of the Debtors' discharge pursuant to 11 U.S.C. § 727(a)(3) of the Bankruptcy Code based on the allegation that the Debtors failed to keep or maintain any records or books from which the Debtors' financial condition could be ascertained. The claim in Count IV of the Complaint seeks a denial of the Debtors' discharge pursuant to 11 U.S.C. § 727(a)(4) of the Bankruptcy Code on the basis that the Debtors committed a false oath with reference to matters contained in the schedules and statement of affairs filed by them, and that they committed false oath with reference to testimony by Raymond Decker at the meeting of creditors that he did not make any investments in the stock market. The claim in Count V of the Complaint pursuant to 11 U.S.C. § 727(a)(5) is based on the assertion that the Debtors have failed to satisfactorily explain any loss of assets or deficiency of assets to meet the Debtors' liabilities. In Count VI, the Plaintiff seeks an order from this Court declaring that the obligation allegedly due and owing by the Debtors to the Plaintiff shall be declared to be nondischargeable pursuant to § 523(a)(2)(A) on the basis that the Debtors obtained money from the Plaintiff through false pretenses.

At the final evidentiary hearing, this Court granted a Motion of involuntary dismissal of all counts as to Helen Decker and also granted the Motion to Dismiss the claim set forth in Count III and Count V as to Raymond Decker. Accordingly, the matters presently under consideration for this Court's determination, are Counts I, II, IV and VI which all relate to Raymond Decker (Debtor).

At the final evidentiary hearing, the following facts which are relevant and germane to the matters under consideration

were established and they can be summarized as follows:

In September of 1986, the Debtor applied for and obtained a line of credit and a credit card from the Plaintiff. In connection with this transaction, the Debtor filled out and signed a credit application entitled, "Barnett Credit Line" (Plaintiff's Exh. No. 1). The Debtor's wife, Helen Decker, signed the form as co-applicant. It appears that Rita Janski, the branch manager of the bank, filled in many of the numbers that appear on the credit application because the Debtor left several items in blank. There is no question that much of the information that appeared on the credit application turned out to be incorrect and made the Debtors look more financially secure than they actually were. Although the Plaintiff contends that the credit application was materially false, there is hardly any question that both parties, i.e., the Debtors and the loan officer of the Plaintiff, were responsible for the incorrect information. For example, under "Your Real Estate", the Debtors listed three properties as follows: 5024 East 127th Way, Thornton, Colorado; 5070 Dover Street, Thornton, Colorado; and 10156 Briarwood Circle. It is without dispute that the Debtor did not own any real property located at 5070 Dover Street, but rather, he had an interest in a wrap-around mortgage on property located at 5780 Dover Street, Thornton, Colorado. The mortgage was evidenced by a note receivable which the Debtor listed on the credit application valued at $70,000 as one of his assets. It is disputed, however, that at the time the Debtor submitted the loan application to the Plaintiff, the balance due on the note was only approximately $35,000. It further appears that Ms. Janski independently added $3,419 to the Debtors' income for items such as interest, social security and rent which she assumed, by looking at the credit application, that the Debtors probably had. Ms. Janski also added $86,000 to the Debtors' assets in the column relating to cash, which she assumed, by looking at two bank statements, that the Debtor owned. Ms. Janski also made an error in adding up the figures. Notwithstanding, it appears, that the Debtors still would have qualified for a loan in the amount of $34,-000, about $10,000 less than they received had she not miscalculated one of the figures. Based on the credit application, the Debtors were granted a $10,000 credit line and a $5,000 limit on a Visa credit card from the Plaintiff, Barnett Bank of Pasco County.

Eventually, the homestead of the Debtors' in Colorado was sold and a portion of the sales proceeds were used by them to acquire a new residence in Pinellas County, Florida. The balance of the proceeds were deposited to Columbia Savings, Denver, Colorado (Plaintiff's Exh. No. 1 [Financial Statement], No. 6 and No. 15). On or about January 1988, the Debtors sold the balance of their interest in the wrap-around mortgage for $18,000 cash to William Bromberg, Esq. (See Statement of Affairs Q. No. 12(b).) In the meantime, the monies from Columbia Savings were transferred and deposited in a Certificate of Deposit maintained by them at Barnett Bank of Hernando County.

The Debtor admits that shortly before his bankruptcy, the certificate of deposit was cashed in at a substantial penalty for early withdrawal. In addition, the Debtor admits that he substantially discounted the wrap-around note to his former attorney to get the $18,000 cash. The record is further without dispute that the cash from both sources was used to pay off an obligation to Sun Bank on a mortgage encumbering their residence in an approximate balance of $67,000. (See Exhibits No. 17, No. 5 and Answer to Question No. 12 on Statement of Affairs.) The obvious result was that following the $67,000 payment to the mortgagee, Debtor's equity in their homestead increased substantially.

It is undisputed that at some point, the Debtors became seriously delinquent in their loan payments. Ms. Janski, who was branch manager of the Plaintiff at the time, contacted the Debtor concerning their delinquent accounts. It is Ms. Janski's contention that the Debtor told her that he had suffered a loss in the stock market, but promised that he would soon be making up

the delinquencies. The Debtor contends that he had not had any dealings in the stock market for the past ten to fifteen years, and that he never stated to Ms. Janski that the reason for the delinquent payments was his loss in the stock market. Although the Plaintiff introduced an inter-office memo dated March 28, 1988 (Pl.Exh. No. 13), giving a list of delinquent accounts and listing the Debtors with the comment, "Decker", "R. Janski—customer claims he suffered great financial losses; will try to make payment this week"; nothing is mentioned in this scenario specifically about any losses on the stock market. It is undisputed that the Debtors incurred $9,166.33 worth of debt on their line of credit and $3,998.76 worth of debt on their Visa credit card (Plaintiff's Exh. Nos. 11 and 12). It is also undisputed that they continued making payments on both the credit line and the Visa until January 26, 1988, and February 7, 1988, respectively. The last transactions on the account were made in November, December and February and included cash advances as well as the use of overdraft protection.

The Debtors claimed as exempt a home located in Hudson, Florida, as their homestead, and a 1973 Hornet and 1984 Cadillac under personal property. The Debtors claimed a 1986 Nissan truck as exempt. The Statement of Affairs indicates the purchase of a 1984 Cadillac by trading a 1979 Mark V plus $2,200 in cash and a payment to Debtors' counsel in the amount of $500 on February 9, 1988.

On January 23, 1989, the Debtors filed an amendment to their Statement of Financial Affairs disclosing the first time transfer of the proceeds from the sale of the Colorado homestead in the amount of $48,293.15 from Barnett Bank to Sun Bank on December 29, 1987.

Basically, these are the relevant facts established at the final evidentiary hearing. The threshold issue is whether the Debtor should be denied a general discharge in bankruptcy as a denial of his discharge will render the dischargeability issues academic and moot.

Under § 727(a)(2) of the Bankruptcy Code, the Debtors will be denied a discharge if

the debtor with intent to hinder, delay, or defraud a creditor or an officer of the estate, charged with custody or property under this title, has transferred, removed, destroyed, mutilated or concealed, or has permitted to be transferred, removed, destroyed, mutilated or concealed.

(a) property of the debtor within one year before the date of the filing of the petition, or

(b) property of the estate after the date of the filing of the petition. . . .

Although some courts are split as to the burden of proof in § 727 complaints, this Court follows the view that the burden of proof is clear and convincing evidence. *In re Booth,* 70 B.R. 391 (Colo.1987); *In re Martin,* 88 B.R. 319 (Colo.1988) In order for a party objecting to discharge to meet his burden of proof, the evidence must be such that when considered, the court concludes that the debtor has violated the spirit of bankruptcy laws and, therefore, he should be denied the privilege of eliminating the legal obligation of his debt. *See In re Cohen,* 47 B.R. 871 (S.D.Fla.1985). The Plaintiff contends that the Debtor transferred property with the intent to hinder or defraud them within one year of the filing of bankruptcy, or alternatively, that certain property, if it was not transferred, was concealed with the intent to hinder or defraud the Plaintiff. As to the real property located at 5024 East 127th Way, Thornton, Colorado, it is true that the property was sold on January 19, 1987, within one year of the filing of bankruptcy. There was no evidence, however, that the transfer of this property was in any way fraudulent but rather, that the Debtors were simply moving from the state of Colorado to the state of Florida and needed to sell their home.

As to the three automobiles described as a 1974 AMC, a 1973 Buick, and a 1974 Ford van listed on the Debtor's credit application to the Bank in 1986, but not listed on the Debtor's bankruptcy schedules, the unre-

butted testimony was that the Debtor had transferred these vehicles as a gift to his son more than one year prior to the filing of the bankruptcy. Also in question were the figures of $86,000 in cash in Columbia Savings which was added to the Debtor's asset column by Ms. Janski on the credit application, as well as $24,000 in cash in Republic Bank. During this period of time the Debtor had withdrawn $24,910 from Columbia Bank and deposited those funds in Republic Bank, therefore, the addition of $86,000 to the column of assets was incorrect. The actual amount remaining in Columbia Bank at the time of the credit application was approximately $61,000. Ms. Janski acknowledged that she, in fact, inserted the figures from the bank statements and added up the column. There was no evidence that the Plaintiff intended to purposely mislead the Bank.

■ The Plaintiff next contends that the Debtor converted non-exempt assets to exempt assets shortly before bankruptcy with the intent to defraud or hinder the creditor. This proposition is based on the undisputed fact that the Debtors sold their homestead in Colorado and discounted the balance due on the note secured by the wrap-around mortgage and used the proceeds of these sales to pay up the mortgage on their homestead in Florida.

This contention is equally without merit. The legislative history of § 522 of the Bankruptcy Code leaves no doubt that conversion of non-exempt property into exempt property before filing a Petition for Relief is permitted. This practice is not fraudulent to creditors and permits the Debtor to make full use of the exemptions to which the Debtor is entitled. *H.R. Rep. 95–595, 95th Cong. 1st Sess.* 360–61 (1977). In the case of *In re Carey,* 96 B.R. 336, 18 BCD 1501 (W.D.Okla.1989), the court held that a Chapter 7 debtor was not denied a discharge under § 727 where she was open about her efforts to transform exempt property into non-exempt property as guided by her bankruptcy counsel, and fully disclosed all transactions in her bankruptcy schedules as well as at the meeting of creditors. *See also, In re Ellingson,* 63

B.R. 271 (1986). *Contra, In re Norwest Bank Nebraska, N.A. v. Tveten,* 848 F.2d 871 (8th Cir.1988), where the Court of Appeals affirmed the denial of discharge of the debtor, who converted $700,000 of non-exempt property into exempt property on eve of bankruptcy.

The social policies behind the enhancement of exemptions include the acquisition or improvement of homestead on the eve of bankruptcy which is consistent with these policies. Even though the Debtor knew at the time that the assets were converted from non-exempt to exempt assets and that he was about to file bankruptcy, this fact alone will not render the transfer of assets fraudulent which, in turn, would warrant a denial of the discharge.

There is no evidence in this record to establish an intent to defraud a creditor. The fact that the net effect of these transactions did, in fact, put under the exemption substantial assets is of no consequence. The Debtor merely attempted to do that which the function of exemptions was meant to do, and that is to put the property beyond the reach of his creditors. *See In the Matter of Reed,* 700 F.2d 986 (5th Cir.1983).

The Plaintiff's next contention is that the Debtors' discharge should be denied under § 727(a)(4)(A) which provides in pertinent part:

§ 727. DISCHARGE

(a) The court shall grant the debtor a discharge unless—

(4) the debtor knowingly and fraudulently, in or in connection with the case—

(A) made a false oath or account; . . . .

The Plaintiff alleges that the Debtor committed false oath with reference to matters contained in his schedules and statement of affairs, and that he also committed false oath with reference to testimony at the meeting of creditors concerning the reasons for his financial difficulties. The primary purpose of § 727(a)(4)(A) is to insure that dependable information is supplied to those interested in the administra-

tion of the bankruptcy state. *See In re Diodati,* 9 B.R. 804 (Mass.1981).

■ It is true that the Debtor did not disclose the transfer of the proceeds from the sale of the Colorado homestead in the amount of $48,000 from Barnett Bank to Sun Bank on December 29, 1987. However, the failure to disclose this transfer was most likely due to inadvertence, especially in light of the fact that following the § 341 meeting of creditors, the Debtor immediately filed an amendment to his Statement of Affairs and fully disclosed this transfer. A failure to include a material transaction in the Schedules or in the Statement of Financial Affairs due to mere mistake or inadvertence is not sufficient to require denial of discharge. Before the claim of false oath is established, there must be convincing evidence that the Debtor intended to make the false oath. *See In re Martin,* 88 B.R. 319 (Colo.1988) In addition, the Debtor's testimony at the final evidentiary hearing was consistent with his testimony given at the meeting of creditors. Based on the foregoing, this Court is satisfied that the Plaintiff failed to carry its burden of proof as to the claim set forth in this count of the Complaint.

■ The Plaintiff's next contention is that a debt allegedly due and owing to the Plaintiff should be excepted from discharge pursuant to § 523(a)(2)(B).

§ 523(a)(2)(B) states in pertinent part:

§ 523. EXCEPTIONS TO DISCHARGE

(a) A discharge under section 727, 1141 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—

(2) for money, property, services, or an extension, renewal or refinancing of credit, to the extent obtained by—

(B) use of a statement in writing—

(i) that is materially false;

(ii) respecting the debtor's or an insider's financial condition;

(iii) on which the creditor to whom the debtor is liable for such money, property, services, or credit reasonably relied; and

(iv) that the debtor caused to be made or published with intent to deceive; . . . .

It is axiomatic that courts narrowly construe exceptions to discharge in bankruptcy against the creditor and in favor of the Debtor. See *In re Cohen,* supra; *In re Mart,* 87 B.R. 206 (S.D.Fla.1988). The Plaintiff contends that the debt should be excepted from discharge on the basis that the Debtors sought the approval of credit based on the false credit application. Although it is undisputed that many items on the credit application were not as they appeared, it is also without dispute that the agent of the Plaintiff was, in fact, responsible for actually filling in many of the numbers that appear on the application. As to the inclusion of the $70,000 note which the Debtor listed under the "assets" column (Plaintiff's Exh. No. 5), a clear reading of the document showed that the Debtors in fact, did not have a $70,000 receivable, but rather about $35,000 due to the Debtors at the time of the credit application. In addition, while the Debtor admits that he made an error to the tune of $70,000 on the credit application, he explained that error to Ms. Janski when he took her the documentation. As to the figures from Republic Bank and Columbia Bank, although the documents were furnished by the Debtor to the Plaintiff, it was Ms. Janski, not the Debtor, who added the figures up.

Although it is clear that errors were made by both parties in filling out the credit application, there was no evidence that the Debtor submitted a false financial statement with the intent to deceive or misrepresent the Plaintiff. Therefore the claim in Count I based on § 523(a)(2)(B) must fail.

Finally, the Plaintiff claims that the debt allegedly due and owing should be excepted from the Debtors' discharge pursuant to § 523(a)(2)(A) which states in pertinent part:

§ 523. EXCEPTIONS TO DISCHARGE

. . . (A) false pretenses, a false representation, or actual fraud, other than a

statement respecting the debtor's or an insider's financial condition;....

The basis for this contention is that the Debtor borrowed funds from the credit line under false pretenses, and that he began using the overdraft check protection and cash advances as a means of making minimal credit card payment and to provide additional cash in connection with purchases, including a 1984 Cadillac made shortly before the filing of bankruptcy. These cash advances beginning 120 days prior to bankruptcy consisted of the following amounts (Plaintiff's Exh. Nos. 11 and 12):

| | | | |
|---|---|---|---|
| November 23 | 1988 | $1,000.00 | Cash Advance from Visa |
| December | 1988 | $ 100.00 | Overdraft protection from his credit line |
| January 11 | 1988 | $ 650.00 | Overdraft protection from his credit line |
| | | $1,000.00 | Cash Advance from his Visa |
| February 1 | 1988 | $1,050.00 | Overdraft protection form his credit line |
| | | $1,000.00 | Cash Advance from his Visa |

The Plaintiff concedes that although these cash increases were under the Debtor's credit limit, they were made at a time when the Debtor had incurred approximately $37,000 in other charge card related debts, that the Debtor had no reasonable prospect of being able to pay, nor any intention of actually paying the obligation, and that, therefore, these debts were incurred under false pretenses. Although the Plaintiff failed to produce any evidence that the Debtors' borrowing pattern had changed in any way during the period immediately preceding the bankruptcy, the cash advances are a horse of a different color.

■ The Debtors filed their Petition in bankruptcy on March 17, 1988. The Debtors were retired with no real expectancy of any increase in the future of their income. They lived on a fixed income. In the Debtor's Statement of Financial Affairs, he disclosed a payment to his attorney, Jack Weech, in the amount of $500 on February 9, 1988. Accordingly, the last cash advance was delivered on February 1, 1988 (Exh. No. 11). It appears that the Debtor knew on February 1, 1988, that he did intend to file bankruptcy petition, and at that time knew he would be unable to repay his debts. Looking at the picture as a whole, this Court is satisfied that the February cash advance of $1,000.00 as well as overdraft protection in the amount of $1,050 was obtained by false pretenses. The close proximity of time in retaining an attorney and receiving these monies sustains the inference that the Debtor knew he had no reasonable prospect of being able to pay, and therefore no intention of actually paying the obligation. The Court is satisfied, however, that the earlier cash advances and overdraft protection transactions were well within the credit limit, and that the Plaintiff has not shown any actual fraud or any real inference of wrongdoing as to those.

Based on the foregoing, this Court is satisfied that the Plaintiff failed to sustain his burden of proof with respect to the claims in Counts I, II and IV, and, therefore, these claims should be dismissed. The claim in Count VI is sustained, but only to the extent of the cash advance and overdraft protection in the amount of $2,050, and this amount should be excepted from the general protection of the discharge pursuant to § 523(a)(2)(A).

A separate Final Judgment will be entered in accordance with the foregoing.