In re Myron LEVINE a/k/a Mike, and Jacqueline P. Levine a/k/a Jackie, Debtors.

Charles WEISSING, Trustee, Plaintiff,

v.

Myron LEVINE a/k/a Mike, and Jacqueline P. Levine a/k/a Jackie, Financial Benefit Life Insurance Company, Life USA Insurance Company, and Presidential Life Insurance, Defendants.

Bankruptcy No. 91–327–8P7.
Adv. No. 91–0468.

United States Bankruptcy Court,
M.D. Florida,
Tampa Division.

April 2, 1992.

Bernard J. Morse, IV, Tampa, Fla., for plaintiff.

Roberta Colton, Tampa, Fla., John Yanchunis, St. Petersburg, Fla., William Edwards, for defendants.

## ORDER ON MOTION TO DISMISS

ALEXANDER L. PASKAY, Chief Judge.

THIS IS a Chapter 7 liquidation case and the matter under consideration is the Defendants', Myron and Jacqueline P. Levine (Debtors), Motion to Dismiss a Complaint filed by the Trustee in this case, Charles Weissing (Trustee), seeking to set aside certain transfers claimed to be fraudulent and also for injunctive relief to prevent further disposition of the assets involved. The Court has considered the Motion, together with the record, and finds that the undisputed facts relevant to the matter under consideration are as follows:

On January 11, 1991, the Debtors filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code. On April 30, 1991 they filed a second amendment to their Schedule B–4, where they disclosed for the first time that between January 8 and September 4, 1990, they converted $440,000 of nonexempt assets into exempt assets by purchasing annuity policies from four separate life insurance companies, all of which are also named as Defendants in this adversary proceeding. The Debtors are currently receiving periodic distributions from these life insurance companies.

When the Debtors purchased these annuities, they were indebted to James A. Miller (Miller), who is not a party to this action. In his Complaint, the Trustee asserts that the Debtors' sole purpose in purchasing the annuities was to hinder, delay or defraud Miller from pursuing his claim against them. As a result, the Trustee seeks to have the Debtors' conversion of nonexempt assets into exempt assets, which the Trustee claims to constitute fraudulent transfers, set aside pursuant to *Fla.Stat.* § 726.-105, and to have the assets returned to the estate for the benefit of creditors.

The Trustee's Complaint also seeks an injunction to prevent the life insurance companies from making any further payments to the Debtors until this matter has

been adjudicated. Subsequent to the filing of the Complaint, the Trustee moved for a preliminary injunction to this effect. However, the parties were able to stipulate to an agreement providing the Debtors with a fixed monthly payment from the annuities pending the resolution of this adversary proceeding, and this Court entered an Order approving the Stipulation.

The Debtors have since filed a Motion to Dismiss the Trustee's Complaint, which is the matter currently under consideration. The Debtors contend that there was never any "transfer" of any of their assets, and thus *Fla.Stat.* § 726.105 is inapplicable. The Debtors allege that they simply "exchanged" nonexempt assets for exempt assets, a practice not prohibited by the Bankruptcy Code, and therefore, the Complaint should be dismissed.

In the Motion to Dismiss, the Debtors rely on the specific language of *Fla.Stat.* § 726.105 requiring a "transfer" by the Debtor. The Debtors argue that since, by definition, a "transfer" requires a transferor and a transferee, the transaction in question does not fall within the provisions of *Fla.Stat.* § 726.105 since there was no transferee and the ownership of the property in question never changed. Instead, the Debtors contend that they merely converted nonexempt assets into exempt assets, thus removing the assets from the reach of creditors.

A "transfer" is defined in § 101(54) of the Bankruptcy Code and in *Fla.Stat.* § 726.102(12) as "every mode, direct or indirect, absolute or conditioned, voluntary or involuntary of disposing of or parting with an asset or an interest in an asset, ..." Clearly this section contemplates two parties to a transfer: the transferor who disposes of or parts with an asset, and the transferee who receives the same. Florida Statutes § 726.105 provides in pertinent part that "[a] transfer ... by a Debtor is fraudulent as to a creditor ... if the debtor made the transfer ... [w]ith actual intent to hinder, delay, or defraud any creditor ..." *Fla.Stat.* § 726.108, in turn, provides that such transfer may be avoided.

■ Applying to the facts of this case the requirements of both the Florida Statutes and the Bankruptcy Code that there must be a transfer before the same could be set aside as fraudulent, this Court is satisfied that there was no transfer and, therefore, the conversion of the Debtor's property cannot be challenged as fraudulent. *Fla.Stat.* § 726.108; 11 U.S.C. § 548. This is so because the Debtors still retain control and ownership of the assets acquired with funds they obtained from disposition of their nonexempt assets, and the fact that this conversion effectively removed the former assets from the reach of the creditors is of no consequence.

■ Section 522 of the Bankruptcy Code governs the exemptions which may be claimed by a debtor who files a Petition for Relief under the Bankruptcy Code. In most States, including Florida, the exemptions to which a debtor is entitled are governed by state law, since under § 522(b) of the Bankruptcy Code, a state can choose to "opt out" of the exemptions provided by federal law and choose instead to set their own allowable exemptions. Because the annuity plans which the Debtors purchased with their nonexempt assets are allowable exemptions under Florida law pursuant to *Fla.Stat.* § 222.14, the mere fact that the Debtors converted nonexempt assets to annuities which are exempt will not deprive them of their right to have such property protected from the reach of creditors.

■ The legislative history of § 522 of the Bankruptcy Code leaves no doubt that conversion of nonexempt property into exempt property prior to filing a Petition for Relief is, in fact, permitted. Such a practice is not per se fraudulent, and it permits a debtor to make full use of the exemptions to which the debtor is entitled. *In re Decker*, 105 B.R. 79, 83 (Bankr.M.D.Fla.1989); H.R.Rep. No. 95–595, 95th Cong. 1st Sess. 360–361 (1977), U.S.Code Cong. & Admin.News 1978, pp. 5787, 6316, 6317. In sum, conversion of nonexempt property to exempt property for the purpose of placing such property out of the reach of creditors, without more, will not deprive a debtor of an exemption to which the Debtor other-

wise would be entitled. *Norwest Bank Nebraska, N.A. v. Tveten,* 848 F.2d 871, 873–74 (8th Cir.1988).

This Court's opinion should not be construed to be an approval of such "pre-bankruptcy planning" or conversion of non-exempt assets into exempt assets, which might in some cases be grounds to bar a debtor's discharge. There are certainly instances where "bankruptcy estate planning" like these Debtors engaged in may constitute an abuse which may serve to bar a debtor's discharge. A debtor's right to a discharge, unlike the right to an exemption, is determined by federal law, not state law. Further, a discharge in bankruptcy is not a right; instead, it is a privilege reserved for honest debtors. *In re Garman,* 625 F.2d 755 (7th Cir.1980). The Bankruptcy Code provides that a debtor may be denied a discharge under Chapter 7 if, among other things, the debtor has transferred property "with intent to hinder, delay, or defraud a creditor" within one year before the date of the filing of the petition. 11 U.S.C. § 727(a)(2). Thus, if a creditor or the trustee can show extrinsic evidence of a debtor's intent to defraud creditors, a denial of the debtor's discharge would be appropriate under § 727(a)(2) of the Bankruptcy Code. *Tveten* at 874. However, absent such extrinsic evidence of fraud, mere conversion of nonexempt property to exempt property is not fraudulent as to creditors, even if the motivation behind the conversion is to place those assets beyond the reach of creditors. *See Tveten* at 874, and cases cited therein.

Though it is not entirely clear what type of extrinsic evidence will be sufficient to establish the requisite intent to defraud on the part of the debtor, the case of *In re Johnson* provides some examples, including: further conduct intentionally designed to materially mislead or deceive creditors about the debtor's position; conveyances for less than fair value; or the continued retention, benefit or use of property allegedly conveyed together with evidence that the conveyance was for inadequate consideration. *In re Johnson,* 880 F.2d 78, 82 (8th Cir.1989). In addition, *Tveten, supra,* establishes that where an exemption, other than a homestead exemption, is not limited in amount, the amount of property converted from nonexempt to exempt may be considered in determining whether fraudulent intent exists. *Id.* at 875–76.

Based on the foregoing, this Court is satisfied that because there was not, in fact, a transfer made by the Debtors, *Fla. Stat.* § 726.105 is inapplicable to the facts of this case and as a result, the Debtors' Motion to Dismiss the Trustee's Complaint must be granted.

Accordingly, it is

ORDERED, ADJUDGED AND DECREED that the Debtors' Motion to Dismiss is hereby granted, and the Trustee's Complaint is hereby dismissed.

DONE AND ORDERED.