**In re: F. Allan SCHWARB and Linda F. Schwarb, Debtors.**

**No. 92–1647–8P1.**

United States Bankruptcy Court,
M.D. Florida,
Tampa Division.

Oct. 29, 1992.

Amended Order on Motion for Summary Judgement and Objection to Claim of Exemptions Nov. 19, 1992.

Matthew J. Kovschak, for debtor.

Thomas B. Mimms, Jr., for Sir Speedy.

**ORDER ON MOTION FOR SUMMARY JUDGMENT AND OBJECTION TO CLAIM OF EXEMPTIONS**

ALEXANDER L. PASKAY, Chief Judge.

THIS IS a Chapter 11 case and the matter under consideration is an Objection To Claim Of Exemptions of F. Allan Schwarb and Linda F. Schwarb (Debtors). The Objection is interposed by Sir Speedy, Inc. (Sir Speedy) who filed a Motion For Summary Judgment in this contested matter contending that there are no disputed facts and based on same Sir Speedy is entitled to a ruling in its favor sustaining the Objection to the exemptions claimed by the Debtors. The facts as appear from the record are indeed without dispute and can be summarized as follows:

In early 1992, Allan Schwarb (Debtor) sold certain non-exempt real estate. This sale produced $150,000. In addition, the Debtor also liquidated some mutual funds he owned, producing $60,000. It is without dispute that the Debtor used the funds

obtained from the two sales to purchase paid-up annuities in the amount of $85,000 and used the balance to pay off the mortgage which encumbered his homestead. On February 7, 1992, the Debtor and his wife filed their Joint Petition For Relief under Chapter 11 of the Bankruptcy Code. On their Schedule C, the Debtors claimed as exempt the paid up annuities pursuant to *Fla.Stat.* 222.14 and, of course, their residence on which they pre-paid the mortgage as their homestead pursuant to Article X, § 4 of the Florida Constitution.

Sir Speedy, who obtained a judgment against the Debtor in the amount of $103,092 prior to the commencement of this Chapter 11 case, challenged the claim of exemptions on the grounds that the Debtors were guilty of fraudulent pre-bankruptcy planning and therefore, they have forfeited their right to claim the exemptions involved in this Chapter 11 case. In response, it is the Debtors' contention that since this conversion of non-exempt assets into exempt assets is proper under applicable case law, it does not operate as a forfeiture of a claim of exemptions even though the conversion removes the property in question from the reach of the creditors and immunizes same from administration in the bankruptcy case.

Prior to the adoption of the Code, the Debtors' right to exemptions was governed by § 6 of the Bankruptcy Act of 1898. This Section expressly provided that a Debtor may not claim as exempt properties concealed or fraudulently transferred after the discovery of the concealment or after the fraudulently transferred properties are recovered by the Trustee. Section 6 does not deal with conversion of non-exempt property into exempt property. Nevertheless, there is a substantial body of pre-Code case law which supports the proposition that conversion of non-exempt property into exempt property is not fraudulent *per se* and does not automatically defeat the Debtors' claim of exemptions. See, for example, the cases collected in *1A Collier 14th Ed.* ¶ 6.11(5), n. 29, p. 858.

The subject of exemptions is dealt with under the Code by § 522. Just as in Pre–Code law, there is nothing in this Section which deals specifically with the conversion of non-exempt property into exempt property. Cases dealing with this subject generally have concluded that conversion of non-exempt property into exempt property is permitted. *In re Levine,* 139 B.R. 551 (Bankr.M.D.Fla.1992); *In re Decker,* 105 B.R. 79 (Bankr.M.D.Fla.1989). In so holding, these cases have relied on the Legislative History of § 522; S.Rep. 95–989 and H.Rep. 95–595, U.S.Code Cong. & Admin.News 1978, p. 5787 respectively, both of which include a statement to the effect that the Debtor will be permitted to convert nonexempt property into exempt property before filing a bankruptcy petition. The Reports also state that the practice is not fraudulent as to creditors, and the Code permits the debtor to make full use of the exemptions to which he is entitled.

It is important to note that the "Hearings" referred to in the Committee Report consist of a letter from Bankruptcy Judge Phelps and comments on same by Committee Members and witnesses, condemning bankruptcy planning in the strongest terms; see *Hearings on H.R. 31 and H.R. 32 before the Subcommittee on Civil & Constitutional Rights of the Committee on the Judiciary,* 94th Cong., 2nd Sess. (1976). Judge Phelps' letter states that case law on the subject of bankruptcy planning "is in a state of utter confusion;" notes "that the conversion of non-exempt assets into exempt assets on the eve of bankruptcy is not, standing alone, fraudulent," and "that the payment of regular monthly payments on a debtor's homestead ... or various such payments in the usual manner of living of the bankrupt, are perfectly appropriate;" but damns "the deliberate enlargement of exemptions out of the usual and customary manner of living and in contemplation of bankruptcy" as "cheating" which "shocks one's conscience" and "bring[s] the whole bankruptcy process into disrepute."

Judge Phelps observed, "To have the bankrupt form the decision that he will file ... bankruptcy proceedings and thereafter, with guidance from his attorney, to convert his salable assets into cash and then use

that cash in such a way to hide it from his creditors, even while his attorney is busy typing up the bankruptcy schedules, appears to me to be fraudulent." Judge Phelps used the word "hide" to mean "shelter," not "conceal;" for he offered an example illustrated by a debtor's own statement of affairs. Former Bankruptcy Judge Cyr, now Judge of the First Circuit Court of Appeals, agreed that such conduct by debtors is "outrageous" and especially will be more prevalent as exemptions become more generous.

Thus, there is scant, if any, support for the notion that bankruptcy planning was approved without reservation by Congress. In fact, the Committee Report often cited seems to have been merely an artless paraphrase of Judge Phelps' letter; and the real sense of the Committee should be found in Judge Phelps' letter, rather than the oft-sited quote seemingly giving a carte blanche approval of pre-bankruptcy planning. Judge Phelps' letter also made it clear that advice of counsel is no excuse for such conduct, but rather may be considered part of the very essence of the offensive conduct. It is clear that the complete legislative history of the Code indicates that conversion of non-exempt property into exempt property should be permitted only within limits—and outright fraudulent bankruptcy planning exceeds those limits and should not be permitted. This view of the legislative history is also in accord with the language of the Code and with the general principles of equity. *In re Spoor-Weston, Inc.*, 139 B.R. 1009 (Bankr. N.D.Okla.1992).

■ Accordingly, when the Debtor's right to exemption is challenged on the grounds that the Debtor converted non-exempt property to exempt property, it is appropriate to inquire into the circumstances surrounding the transfer, as there is substantial and respectable authority to support the denial of the Debtor's right to exemptions upon a showing by extrinsic evidence that the Debtor converted non-exempt property into exempt property with the specific intent to defraud his or her creditors. *1A Collier 14th Ed. supra*, n. 30.

It is clear from the legislative history that the extrinsic evidence needed to defeat the claim of exemption might be established, for instance, by showing that the Debtor embarked on his pre-bankruptcy planning after he had already decided and consulted with an attorney concerning the filing of a petition for relief. Equally, a showing that a judgment creditor was about to levy, attach or garnish the non-exempt property just prior to the conversion might be sufficient extrinsic evidence to deny the Debtors' claim of exemption.

■ Sir Speedy posits that short of an objection to exemption, a creditor is left with no remedies in the face of conversion of assets. This Court is satisfied that there is strong support for the proposition that there is remedy to defeat a fraudulent pre-bankruptcy planning. In a Chapter 7 liquidation case, the case may be dismissed on the Court's own motion or on motion of the United States Trustee pursuant to § 707(b) on the ground that to grant relief to a debtor whose debts are primarily consumer debts would be a substantial abuse of the provisions of the Chapter. Of course, in addition to the possible dismissal, the Trustee may even confer a greater benefit on creditors in certain instances by successfully challenging the claim of exemption by creating an estate in a case which otherwise would be closed as a no asset case. In addition, some courts hold that fraudulent pre-bankruptcy planning may be basis to deny the Debtors' discharge pursuant to § 727(a)(2). *In re Johnson*, 880 F.2d 78 (8th Cir.1989); *Norwest Bank Nebraska, N.A. v. Tveten*, 848 F.2d 871 (8th Cir.1988). There is some difficulty with this last approach because the term "transfer" presupposes a transferor and a transferee. In a case of "pre-bankruptcy planning," both the transferor and the transferee are identical and what was changed was merely the character of the property from non-exempt into exempt property. *In re Levine, supra.*

The significance of the remedy available for fraudulent pre-bankruptcy planning is

equally important in the relief Chapters of the Code, Chapters 11, 12 and 13, even though none are designed to be liquidation cases. For instance in a Chapter 11 case a Plan of Reorganization cannot be confirmed unless the Court finds pursuant to § 1129(a)(3) that the Plan has been proposed in good faith and not for any means forbidden by law. A debtor who fraudulently converted non-exempt assets into exempt assets on the eve of Bankruptcy would be hard pressed to convince the Court that the Plan of Reorganization for which the debtor seeks confirmation was proposed in good faith unless the Plan proposes to give full and complete satisfaction of all allowed claims immediately after the effective date or at least shortly thereafter. The same good faith requirement is also present in Chapter 12—§ 1225(a)(3) and in Chapter 13—§ 1325(a)(3).

In considering the time frame relevant to the conversion of the Debtors' assets in this instance, it is clear that a systematic conversion of assets was undertaken by the Debtors in order to protect these assets from the claim of Sir Speedy, who obtained a judgment against the Debtors and no doubt was ready to undertake whatever steps were necessary to obtain satisfaction of its judgment. Based on the foregoing, this Court is satisfied that sufficient evidence exists to support the denial of the Debtors' right to claim this property as exempt. Therefore, it is appropriate to grant the Motion for Summary Judgment and sustain the objection to claim of exemption.

██ As a final comment, it should be noted that this Court is receding in part from its holding in *In re Levine, supra,* that converting non-exempt property to exempt property is not *per se* fraudulent and conversion of such property for the purpose of placing such property out of the reach of creditors will not deprive a debtor of an exemption to which the debtor would otherwise be entitled. After further research and consideration, this Court is satisfied that a showing that the conversion of a non-exempt asset into an exempt asset for the specific purpose of placing the asset out of the reach of creditors is sufficient to deprive a debtor of his right to claim that property as exempt.

Accordingly, it is

ORDERED, ADJUDGED AND DECREED that the Motion For Summary Judgment is hereby granted in full. It is further

ORDERED, ADJUDGED AND DECREED that the Objection To Claim of Exemptions filed by Sir Speedy, Inc. is hereby sustained, and the property which is the subject of this contested matter shall be subject to administration for the benefit of the general creditors.

DONE AND ORDERED.

AMENDED ORDER ON MOTION FOR SUMMARY JUDGMENT AND OBJECTION TO CLAIM OF EXEMPTIONS

Nov. 19, 1992.

THIS IS a Chapter 11 case and the matter under consideration is an Objection To Claim Of Exemptions of F. Allan Schwarb and Linda F. Schwarb (Debtors) interposed by Sir Speedy, Inc. (Sir Speedy). The Debtors subsequently filed a Motion for Summary Judgment in this contested matter contending that there are no disputed facts and therefore the Debtors are entitled to a ruling in their favor overruling the Objection to the exemptions claimed by them. It should be noted that Sir Speedy has not filed its own Motion for Summary Judgment.

The Debtor's Motion was heard in due course and on October 29, 1992, this Court entered its detailed finding and conclusions in an Order on Motion for Summary Judgment and Objection to Claim of Exemptions, but erroneously assumed that the Motion under consideration was a Motion for Summary Judgment filed by Sir Speedy, when in fact, it was the Motion of the Debtor which was heard. While this Court fully readopts and reaffirms its findings and conclusions in the Order on Motion for Summary Judgment and Objection to Claim of Exemptions entered on October 29, 1992, it is appropriate to vacate the

decretal part of the Order to correctly reflect the appropriate ruling. It is therefore

ORDERED, ADJUDGED AND DE-CREED that the Motion for Summary Judgment filed by the Debtors be and the same is hereby denied. It is further

ORDERED, ADJUDGED AND DE-CREED that the Objection to Claim of Exemptions of F. Allen Schwarb and Linda F. Schwarb be rescheduled for a pre-trial conference to hear all pending Motions if filed and to prepare this contested matter for trial if necessary, before the undersigned in Courtroom A at 4921 Memorial Highway, Tampa, Florida 33634, on November 19, 1992, at 1:30 p.m.

DONE AND ORDERED.