In re Arthur A. SMITH, Jr. and Carol Smith d/b/a Mountain Valley Car Wash, Debtors.

The FIRST NATIONAL BANK OF BOSTON, Plaintiff,

v.

Arthur A. SMITH, Jr. and Carol A. Smith, Defendants.

Bankruptcy No. 91–16018–9P7.
Adv. No. 92–901.

United States Bankruptcy Court, M.D. Florida.

June 7, 1993.

Jeffrey W. Leasure, Ft. Myers, FL, for plaintiff.

Brian Levy, Cape Coral, FL, for defendants.

**FINDINGS OF FACT, CONCLUSIONS OF LAW, AND MEMORANDUM OPINION**

ALEXANDER L. PASKAY, Chief Judge.

THIS IS a Chapter 7 case and the matter under consideration is the Complaint Objecting to Discharge filed by First National Bank of Boston (Bank) in the above captioned adversary proceeding. The Bank's Complaint contains one count based upon

11 U.S.C. § 727(a)(2), and alleges that Arthur and Carol Smith (Debtors) transferred property with the intent to hinder, delay, or defraud their creditors within one year of the filing of their petition for relief. The facts relevant to the resolution of this matter, as established at the final evidentiary hearing held on April 1, 1993, may be summarized as follows.

Arthur A. Smith has been a real estate developer from 1970 until the present. In that capacity he developed several large projects, including shopping centers and motels. Carol A. Smith, his wife, has a degree in accounting. She has worked in the construction business with her husband since 1983. Her function was to prepare and organize all of the paperwork and documentation for the Debtors' construction company.

Until August of 1991, the Debtors were residents of Massachusetts. In May, 1988, Mr. Smith and his wife purchased residential real property in Florida for $225,000.00. As part of this transaction, the Debtors made a $25,000.00 down payment and financed the balance of the purchase price secured by a first mortgage on the property. The mortgage note was a one-year adjustable rate mortgage amortized over 30 years. In 1990, based on the promissory note, the Bank instituted a suit against the Debtors in the Massachusetts State Court. On January 30, 1991, an Agreement for Judgment was entered by the Massachusetts State Court against the Debtors in the amount of $4,592,644.52. Needless to say, the judgment was never paid. The Bank is a creditor of the Debtors and the owner and holder of the outstanding judgment.

It appears that Arthur A. Smith, the Debtor, first met with his attorney on August 6, 1991. At this meeting, he discussed "how to avoid any problems, and how to straighten [his] business out." (Plaintiff's Exh. #1 p. 10) The Debtors' subsequent actions show exactly what steps they took to "avoid problems." In September of 1991, the Debtors received two checks representing tax refunds totalling $114,388.00 from the United States Treasury. (Plaintiff's Exh. #4) The Debtors endorsed the checks and purchased cashier's checks and prepaid the balance ($100,000.00), on the mortgage, encumbering their homestead. The cashier's checks were held by the Debtors and not deposited in their personal account until December 2, 1991 when they issued a check in the amount of $13,000.00 and made a second reduction on the principal of the mortgage.

On December 12, 1991, the Debtors again met with their attorney to discuss filing bankruptcy and filed their Voluntary Petition for Relief under Chapter 11 of the Bankruptcy Code on December 12, 1991. On the Schedules filed with the Petition the Debtors claimed their residence as their homestead and exempt pursuant to Article X, § 4 of the Florida Constitution. In August of 1992, the Debtors refinanced the mortgage on their homestead. Subsequently, their Chapter 11 case was converted to a Chapter 7 case pursuant to an order of this Court entered on August 25, 1992.

According to the Debtors, they made these payments on the principal of the mortgage in order to reduce their monthly payments and to enable them to get back on their feet. This record reveals no doubt both Debtors are fully conversant and knowledgeable with regard to mortgage transactions; that the Debtors very well knew that paying down the principal would not reduce the payment unless the entire balance was refinanced. In fact, the Debtors were able to restructure the mortgage but not until nine months after they made payments.

 These are basically the facts which, according to the Bank, justify the denial of the Debtors' discharge pursuant to § 727(a)(2) of the Bankruptcy Code. 11 U.S.C. § 727(a)(2) provides as follows:

(a) The court shall grant the debtor a discharge, unless—

* * *

(2) the debtor, with intent to hinder, delay, or defraud a creditor ... has transferred, ... or permitted to be transferred, ... —

(A) property of the debtor, within one year before the date of the filing of the petition.

It is clear that the denial of discharge is one of several appropriate remedies for a creditor faced with a debtor who has converted non-exempt property into exempt property for the specific purpose of placing assets beyond the reach of creditors. *In re Norwest Bank Nebraska, N.A. v. Tveten,* 848 F.2d 871 (8th Cir.1988); *In re Schwarb,* 150 B.R. 470, 472 (Bankr.M.D.Fla.1992). It is equally clear that a creditor objecting to discharge has the burden of proving the elements of his objection by a preponderance of the evidence. *Grogan v. Garner,* 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991).

■ Given the timing of the receipt of the tax refund checks, the timing of the Debtors' consultation with an attorney (August 6, 1991), the entry of judgment (January 30, 1991), and the relative business sophistication of both Arthur and Carol Smith, it is clear that a conversion of non-exempt assets into an exempt asset was undertaken by the Debtors in order to shelter those assets from the Bank and not, as the Debtors suggest, merely to lower their monthly expenses. Arthur Smith, as a sophisticated real estate developer, must have realized that the payment of additional principal beyond the principal component of each monthly installment would not reduce the amount of each monthly payment, although it would reduce the amount of time until repayment of the mortgage and decrease the amount outstanding on the lien encumbering the homestead. His wife, who has a degree in accounting, must also have realized that a partial payment in satisfaction of the principal value of the mortgage would not reduce the amount of their monthly mortgage payment. Clearly, the Debtors knew at the time they made the transfers that, in order to lower their monthly mortgage payments, the mortgage would have to be entirely refinanced. That the Debtors subsequently refinanced their mortgage about nine months after filing their petition for relief does not change the fact that the conversion of non-exempt assets into an exempt asset was commenced with the expectation that the assets would be sheltered from the claims of creditors and that the transfers were executed with a specific intent to hinder, delay, or defraud creditors.

Based on the foregoing this Court is satisfied that the Plaintiff has sustained his burden and proved by a preponderance of the evidence that the Debtors transferred assets with the intent to hinder, delay, or defraud First National in its attempt to collect on its outstanding judgment. Therefore, it is appropriate to deny the Debtors' discharge. A separate Final Judgment shall be entered in accordance with the foregoing.