In re Elmer C. **HILL**, Debtor.

Bankruptcy No. 92–04836.

United States Bankruptcy Court,
N.D. Florida,
Pensacola Division.

Feb. 3, 1994.

John Daniel and J. Nixon Daniel, Pensacola, FL, for creditor.

John E. Venn, Jr., Gulf Breeze, FL, for debtor.

Thomas Reed, Pensacola, FL, Trustee.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

LEWIS M. KILLIAN, Jr., Bankruptcy Judge.

THIS CAUSE was heard before the Court on the objection of Havoco of America, Ltd.

("Havoco"), a judgment creditor in this case, to certain assets claimed as exempt by the Debtor. In general, Havoco objects to three categories of assets claimed as exempt, those being an individual retirement account or "IRA", a home in Destin, Florida, and the Destin home furnishings. The Court having considered the testimony of witnesses, argument of counsel, and pleadings and related documents submitted in the cause, sustains the creditor's objection to the IRA and overrules its objections to the Destin home and furnishings.

The Debtor has engaged in the marketing and managing of coal production contracts throughout his professional life. In 1969, he formed a closely held corporation, Hilco, Inc., as a vehicle to provide brokerage and management services. In 1975, Hilco assisted in the financing of a contract between Havoco and the Tennessee Valley Authority ("TVA"). The Havoco–TVA contract required Havoco to provide the TVA with coal over a 10 year period. To fulfill its obligations under the TVA contract, Havoco entered into a contract with a coal producer, R & F Coal Company ("R & F Coal"). Following the execution of these contracts, the Debtor became an officer and director of Havoco, and was responsible for administering the TVA and related contracts.

From the start of the contract negotiations, the Debtor conspired with the president of R & F Coal and others to eliminate Havoco as the principal under the TVA contract.[1] The conspirators' plan involved the withholding of key information from Havoco and the negotiating in bad faith of periodic price re-negotiations as provided in the Havoco–TVA contract. As a direct result of the conspirators' actions, Havoco was unable to successfully re-negotiate the terms of the TVA contract, and was forced to assign its rights under the contract to R & F Coal. The Debtor then resigned his position with Havoco and assisted R & F Coal in successfully completing negotiations with the TVA. R & F Coal subsequently retained the Debtor's services as a contract administrator under a lucrative long-term contract ("services contract").[2] As a result of these actions, the Debtor was found liable for fraud, conspiracy, tortious interference with contractual relations, and breach of fiduciary duty.[3] Judgment was entered in favor of Havoco in the amount of $15,000,000 on December 19, 1990 by the United States District Court for the Northern District of Illinois.[4]

The three classes of assets claimed as exempt by the Debtor were acquired at different times. In 1977, Hilco established a pension plan for its employees, including the Debtor, which was later rolled into the IRA.[5] The pension was funded entirely by Hilco earnings. No other monies have been deposited into the IRA by the Debtor. The Debtor, a long-time resident of Tennessee, purchased with cash, a $650,000 home in Destin, Florida[6] shortly after the entry of the $15,000,000 judgment by the Illinois district court. The Debtor intended to make the home his retirement residence. The Destin home furnishings were purchased by the Debtor's wife soon after the property was

---

1. The Court relies on the facts underlying Havoco's judgment against the Debtor as determined by the trial court and as adopted by the Seventh Circuit Court of Appeals in *Havoco of America, Ltd. v. Sumitomo Corporation of America*, 971 F.2d 1332 (7th Cir.1992).

2. The services contract was subsequently assigned by the Debtor to Hilco.

3. The trial court's entry of judgment against the Debtor as well as the amount of the damage award was affirmed by the Circuit Court of Appeals for the Seventh Circuit on August 7, 1992. *Havoco of America, supra.*

4. This Court, the Honorable Gordon Kahn presiding, has already determined the debt to be non-dischargeable pursuant to 11 U.S.C. § 523(a)(4). An appeal of this decision is currently pending.

5. Hilco terminated the pension plan in 1987.

6. The Debtor also purchased an vacant lot adjacent to the Destin home with his wife and claims the lot as exempt as tenancy by the entirety property. Havoco has not objected to the Debtor's characterization of the adjacent lot as tenancy by the entirety property, nor has it objected on the basis that the size of the combined lots exceeds the constitutional limits for real property under the state's homestead provisions. *See, Fla. Const.* art. 10, § 4(a)(1). Accordingly, the Destin home and the adjacent lot are referred to collectively as the Destin home.

purchased. The furnishings were paid largely from monies deposited in a joint Florida bank account, although some funds from personal accounts in Florida and Tennessee banks were also used.

Havoco first makes a general objection to each of the claimed exemptions by asserting that the funds used to acquire these assets were generated through the dishonest actions of the Debtor. Havoco alleges the services contract was a benefit realized from the Debtor's wrongful actions, and that the services contract represented 85–100% of the gross revenues of Hilco, an entity controlled by the Debtor. Havoco specifically argues that the IRA should be denied exempt status because the tainted services contract represented the sole source of monies used to fund the IRA. The Debtor responds by asserting the services contract did not result from any wrongful act of the Debtor, but rather, a separate and legitimate contract under which the Debtor provided real services and for which he is entitled to reasonable compensation. The Debtor further asserts that the pension fund was a part of overall compensation package designed to be competitive in the marketplace at the time it was created.

Havoco also makes a similar argument that the funds used to acquire the Destin home and furnishings were derived from the tainted services contract. In addition, Havoco objects to the claimed exemptions for the Destin home and furnishings on the basis that the Debtor engaged in impermissible pre-bankruptcy planning by the conversion of non-exempt assets to exempt on the eve of the filing of a bankruptcy petition. Havoco argues that such conversion of assets on the eve of and in anticipation of the filing of a petition for relief under the Bankruptcy Code is sufficient to disallow the Debtor's right to claim as exempt those assets so converted. The Debtor contends that no illegitimate pre-bankruptcy conversion of non-exempt into exempt assets occurred in this case. The Debtor asserts that he had planned to retire in Florida for many years, and had delayed retiring to Florida due to business concerns requiring his attention and the pending Havoco litigation. The Debtor further points out that he and his wife pur-

chased the Destin home in December 1990, more than year before the filing of a bankruptcy petition in July 1992. The Debtor lastly argues the Destin home furnishings are exempt from his individual debts because they are held in tenancy by the entireties.

■ If discharge is the fresh start afforded honest, but unfortunate debtor by the sweeping away of pre-petition liabilities, then exemptions provide the means with which a debtor can enjoy the fresh start by allowing the debtor to retain certain prepetition assets with which to support himself and his family. Exemptions, therefore, necessarily deprive creditors of assets which would otherwise be available to satisfy their claims. The purpose behind exemptions however is not to provide a windfall for the debtor, but rather, to protect the public from the burdens of supporting a destitute family. *In re Swartz,* 18 B.R. 454, 456 (Bankr.D.Mass.1982).

The Bankruptcy Code establishes a uniform scheme of exemptions, but also permits a state to "opt-out" of the federal scheme and apply its own scheme. 11 U.S.C. §§ 522(d) and (b). Florida has so opted-out of the federal scheme. *Fla.Stat.Ann.* § 222.20 (West 1989). Havoco makes no objection to the claimed exemptions for the IRA and the Destin home on the basis that the assets are not nominally entitled to exempt status as a matter of state statutory law. Rather, Havoco asserts that the Debtor has lost the right to claim these assets as exempt due to impermissible pre-bankruptcy conversion or because no debtor is permitted to use the exemption laws as a safe harbor for ill-gotten gain.

■ Havoco's objection with respect to the IRA based on its assertion that use of the exemption provisions of the Code to retain the benefits of illegal or fraudulent actions is improper is well founded, and therefore, sustained. There is established authority supporting the proposition that exemptions are not to be applied in such a way as to make them instruments of fraud, an imposition on creditors, or a means to escape honest debts. *Matter of Felsinger,* 17 B.R. 226, 228 (Bankr. M.D.Fla.1982); *In re Gherman,* 101 B.R. 369, 371 (Bankr.S.D.Fla.1989). *See also, Ryskind v. Robinson,* 302 So.2d 427 (Fla.

Dist.Ct.App.1974); *Slatcoff v. Dezen,* 76 So.2d 792 (Fla.1955). The record before the Court indicates that the services contract directly resulted from the fraudulent actions of the Debtor during the course of the Havoco–TVA contract negotiation.[7] Thus, all monies generated from the services contract represent ill-gotten gains derived from the Debtor's fraudulent acts. Furthermore, evidence produced at the hearing demonstrated that the pension plan which was later rolled into the IRA was entirely funded from the proceeds of the services contract. From this evidence the Court concludes that the IRA is a repository for ill-gotten monies which cannot be shielded from creditors through the application of exemption provisions.

The Debtor's argument that he is entitled to reasonable compensation for performing under the services contract is unavailing because the Debtor, in fact, was paid for his services. Evidence produced at the hearing indicated the Debtor received wages totalling $2,875,875 and dividends of $692,960 from Hilco after the assignment of the services contract. Neither party disputed the fairness of this compensation for the Debtor's services to Hilco during the life of the services contract. Accordingly, Havoco's objection to the Debtor's claim of exemption as to the IRA account is sustained.

■ Unlike the IRA situation, evidence produced at the hearing showed that monies from sources other than the tainted services contract funded the purchase of the Destin residence. The Debtor produced a summary of income from coal brokerage contract work with various parties as well as income derived from his Hilco employment from 1969 to 1991. This summary showed that the Debtor earned $5,158,056 from individual contracts and $3,850,935 in wages and dividends from Hilco over this 23 year period. Havoco produced no evidence to show that any of the individual contract money resulted

from the Debtor's fraudulent actions. In addition, the Debtor received $282,100 in wages and dividends from Hilco prior to 1977 when the tainted services contract was formed. Thus, the Debtor had significant sources of income outside of that arising from his fraudulent handling of the Havoco–TVA relationship. Moreover, the Debtor testified that personal investments funded the purchase of the Destin home. Havoco failed to show which specific investments funded the purchase of the Destin home, and failed to show that the investments so used were themselves funded by illicit monies. In short, Havoco has failed to produce any evidence that the funds used to acquire the Destin home were derived from the tainted services contract. Accordingly, Havoco's objection to the Destin home cannot be sustained on the basis that the home is a repository for the fruits of the Debtor's fraudulent acts.

■ Bankruptcy courts in Florida review with a critical eye attempts to convert non-exempt assets to exempt on the eve of filing a bankruptcy petition. In general these decisions hold that a debtor loses his entitlement to claim as exempt any asset converted with the specific intent to defraud creditors. *E.g., In re Mackey,* 158 B.R. 509, 512 (Bankr.M.D.Fla.1993); *In re Schwarb,* 150 B.R. 470, 472 (Bankr.M.D.Fla.1992).[8] Intent to defraud creditors may be inferred from the facts and circumstances involved in the case. *Mackey,* 158 B.R. at 512. Timing of the conversion and any attempt by the debtor to conceal the conversion are considered important indicators of fraudulent intent. *Id.* In addition, a relocation of the debtor's residence to Florida as part of an overall scheme to maximize exempt property may be a further indictor of intent to defraud. *In re Coplan,* 156 B.R. 88, 91 (Bankr. M.D.Fla.1993). The objecting party has the burden of demonstrating the specific intent

7. This Court ruled during the hearing on Havoco's objection to exemptions that the Illinois district court had determined the services contract to be the product of the Debtor's fraudulent actions in the contract re-negotiations. Consequently, this Court held the Debtor was collaterally estopped from re-litigating the issue of the formation of the services contract.

8. Other decisions hold that a debtor places into question his right to a discharge for engaging in pre-bankruptcy planning by converting non-exempt assets to exempt with the intent to defraud creditors. *E.g., In re Levine,* 139 B.R. 551, 554 (Bankr.M.D.Fla.1992). *See also, Norwest Bank Nebraska, N.A. v. Tveten,* 848 F.2d 871, 874 (8th Cir.1988).

to defraud by a preponderance of the evidence. Fed.R.Bankr.P. 4003(c); *In re Ehnle,* 124 B.R. 361, 363 (Bankr.M.D.Fla. 1991).

■ In this case, the Court cannot find that Havoco demonstrated by a preponderance of the evidence that the Debtor acted with the specific intent to defraud his creditors. Havoco argues that the Debtor's relocation to Florida soon after the entry of the Havoco judgement in district court evidences the Debtor's intention to evade the consequences of his wrongful acts. It is true that the Debtor made the purchase within days of the entry of the judgment and that Florida offers a more generous exemption scheme than does Tennessee. It is also true that Havoco and the Debtor had been engaged in litigation over the TVA/R & F Coal and related contracts for years at the time of the Debtor's relocation to Florida and that the Debtor paid cash for the Destin home and its furnishings. However, there was also evidence that the Debtor had planned on a Florida retirement for many years before doing so, and the Debtor was, in fact, at retirement age at the time he purchased the Destin home. Beginning in 1989 the Debtor and his wife had hired a real estate broker to assist in locating a suitable retirement home in the Destin area. The Debtor and his wife had placed their Tennessee home on the market with the anticipation that they would purchase a home in Destin when it sold. The Debtor and his wife were looking for homes in the $250,000 to $1,000,000 price range; the parties' broker testified that it was difficult to find homes in this price level in the Destin area. The couple purchased the home only after the broker became aware of its availability through indirect sources in December 1990 and after tough negotiations with the seller. Evidence adduced at trial also showed that it was not unusual for the Debtor to purchase homes with cash. The Debtor made no attempt to conceal the purchase of the Destin property.

Important to the Court's determination in this matter is the timing of the purchase of the home. Some courts have identified the proximity in time of the conversion to the filing of the petition as a key factor in determining whether the debtor intended to defraud his creditors, *In re Mackey,* 158 B.R. at 512; while other courts have found the proximity of the conversion to the "imminent threat of levy, attachment, garnishment, or execution on a judgment" by a creditor to be a key indicator of the debtor's intent. *In re Swecker,* 157 B.R. 694, 695–6 (Bankr. M.D.Fla.1993). Still other courts have looked at the conversion's proximity to both the efforts of the creditor to collect or secure a debt and the filing of a petition. *In re Rightmyer,* 156 B.R. 690, 692–3 (Bankr. M.D.Fla.1993). In this case, the conversion of non-exempt into exempt via the purchase of the Destin home occurred just days after the entry of Havoco's $15,000,000 judgment, but more than 18 months prior to the filing of the Debtor's petition in July 1992. While it is true that the purchase of the home came on the heels of the entry of a very large judgment, this Court is not willing to adopt a *per se* rule wherein every purchase of a potentially exempt asset following the entry of a judgment evidences fraudulent intent on the part of a debtor. When viewed as a whole, the Debtor's assertion that the home was purchased as a retirement residence presents at least as credible an explanation of intent as Havoco's assertion that the home was purchased with the intent to defraud. The objecting party has the burden of proof in demonstrating by a preponderance of the evidence that the debtor is not entitled to a claimed exemption. Here the creditor has failed to show the Debtor had the requisite fraudulent intent at the time he purchased the home and, therefore, Havoco's objection to exemption of the Destin home cannot be sustained on this basis.

■ Lastly, the Court finds sufficient evidence to conclude that the Destin home furnishings are held by the Debtor and his wife in tenancy by the entireties. Havoco raises the issue by asserting the Debtor is not entitled to claim an exemption because the unities of time and title were absent when the furnishings were acquired. This argument misses the point. Tenancy by the entireties is a common law relic founded on the notion that a husband and wife were one person. *Bailey v. Smith,* 89 Fla. 303, 103 So.

833 (1925). Due to the unique nature of this estate, one spouse was unable to alienate the entireties property without the participation of the other spouse. *Id.* In this regard, tenancy by the entireties differs from other joint tenancies in that the creation of entireties property requires only the unities of possession, interest and control. *See, Winters v. Parks,* 91 So.2d 649, 651 (Fla.1956). In determining whether an entireties estate exists, a court must consider the intent of the parties upon acquisition of the property. *Bailey v. Smith, supra.*

■■■■ In this case, the parties acquired the furnishings with the intent that it be held as property by the entireties. Evidence adduced at the hearing indicated that the funds used to purchase the furnishings were drawn from a joint account in a Florida bank.[9] The monies used to open the Florida bank account came from the Debtor's investment accounts and from his wife's personal funds. Witness testimony indicated that the Debtor's wife was given authority to acquire whatever furnishings she felt necessary and desirable on behalf of the couple.[10] The Court concludes when reviewing the circumstances involved that the Debtor and his wife acquired the furnishings for the Destin home with the intent that the property would be held by the entireties.

The inquiry however does not end with the finding that the Destin home furnishings were held by the Debtor and his wife as property by the entireties. This Court has, upon earlier consideration of the issue, concluded that a debtor's interest in entireties property is not exempt to the extent of joint claims against the estate. *In re Boyd,* 121 B.R. 622, 624 (Bankr.N.D.Fla.1989). At a hearing heard earlier before this Court, the case trustee sought approval of a proposed abandonment of certain property to NationsBank in consideration of the bank's release of liens against other property of the estate as well as any deficiency arising from a joint debt of the Debtor and his wife. At that hearing the Court approved the trustee's request to abandon with the additional condition that NationsBank was not to release its deficiency claim against the estate. Accordingly, to the extent NationsBank, or any other creditor, has a joint claim against the estate, the Destin home furnishings are not exempt and, therefore, available for distribution as provided by the Code in § 726. *Boyd,* 121 B.R. at 625 (citing *Moore v. Bay,* 284 U.S. 4, 52 S.Ct. 3, 76 L.Ed. 133 (1931)).

In summary, the Court sustains Havoco's objection to the IRA, and overrules Havoco's objections to the Destin home and its furnishings. A separate order will be entered in accordance herewith.

---

9. The Debtor and his wife testifies that only a few items of personal property were moved to Florida from Tennessee when they retired. Additional testimony indicated that the Hills spent approximately $75,000 to furnish the Destin home.

10. Acts undertaken by one spouse in the acquisition, alienation or disposition of property does not preclude the finding that the property is held by the entireties if the spouse, in fact, acts under the authority of the other spouse. *See, Hagerty v. Hagerty,* 52 So.2d 432, 434 (Fla.1951).