In re Kerrye Hill **LEBOVITZ**, Debtor.

No. 05–38391–L.

United States Bankruptcy Court, W.D. Tennessee, Western Division.

June 9, 2006.

Kerrye Duke, Germantown, TN, Ellen B. Vergos, Martin, Tate, Morrow and Marston, PC, Memphis, TN, for Debtor.

## MEMORANDUM OPINION

JENNIE D. LATTA, Bankruptcy Judge.

BEFORE THE COURT are the Trustee's Motion for Turnover of Property of the Estate, filed March 8, 2006; the Debtor's objection thereto, filed March 28, 3006; the Trustee's Objection to Claimed Exemptions, filed May 4, 2006; the Trustee's Amended Objection to Claimed Exemptions, filed May 15, 2006; the Debtor's Motion to Strike Trustee's Amended Objection to Claimed Exemptions and Attached Affidavit, filed May 18, 2006; and the Trustee's objection thereto. At issue in each of these related pleadings is the ability of the Debtor to retain her jewelry, including her wedding band, as exempt property. The court heard the testimony of the Debtor on May 4, 2006. After carefully considering the testimony, the written exhibits, and the arguments of counsel, the court makes the following findings of fact and conclusions of law. This is a core proceeding. *See* 28 U.S.C. § 157(b)(2)(B).

## FACTUAL BACKGROUND

Kerrye Hill Lebovitz (the "Debtor") filed a voluntary petition for relief under

Chapter 7 of the Bankruptcy Code on October 14, 2005. Schedule B filed in her case listed a wedding ring and other jewelry of unknown value. In Schedule C, the Debtor claimed the wedding ring and jewelry as exempt pursuant to Tennessee Code Annotated § 26–2–104. The value of the claimed exemption and the market value of the property were both listed as unknown. On October 25, 2005, George W. Emerson was appointed Chapter 7 trustee, and was succeeded by Norman P. Hagemeyer on April 4, 2006.[1]

The Debtor is the wife of Dr. Morris Lebovitz who filed for bankruptcy protection in 2004 as the result of illness. It was not originally thought that the Debtor was a co-debtor with her husband on any of his debts, but was later discovered that she was co-signer on one large loan resulting in the necessity of filing her own case. Dr. and Mrs. Lebovitz have been married a number of years. They have four children, the oldest of whom was seventeen at the time of the filing of the Debtor's bankruptcy petition. The Debtor is the owner of the following pieces of jewelry: a 5–carat diamond engagement ring purchased at Tiffany's for a purchase price of $40,000–$50,000, which is worn by the Debtor daily as her wedding band and was purchased by Dr. Lebovitz to replace her original wedding ring, which was lost; a pair of diamond stud earrings, described as "a little under one carat each," which was given to the Debtor by her husband upon the birth of their daughter who is now eleven years old; a diamond drop necklace, which was described as "a little over a carat," and was given to the Debtor by her husband at the birth of her second daughter, who is now seven years old; a diamond tennis bracelet given to the Debtor by her husband as a birthday present; a Cartier watch, which is not in working order, but was purchased for the Debtor by her husband as a Mother's Day gift. The Debtor introduced evidence that the value of her wedding ring is $8,000, and the value of the remaining pieces taken together is $6,000. These values were based upon offers made by four jewelers, three of whom made offers to purchase all pieces except the wedding ring, while the fourth jeweler offered to purchase all of the pieces. Following the hearing, the Debtor filed a written amendment to Schedules B and C setting forth the following values for her jewelry: necklace-$2,500; earrings-$2,000; tennis bracelet-$1,000; wedding ring-$8,000; Cartier watch-$1,500; total estimated value-$15,000. The Debtor claimed each of these as exempt property pursuant to the "wearing apparel" exemption, Tennessee Code Annotated § 26–2–104. The Debtor testified that she wears her wedding ring daily, her watch daily when it is operating, the earrings weekly, and the necklace several times per month. She did not specify how frequently she wears the bracelet. Dr. Lebovitz is no longer able to practice medicine, but receives disability income in the amount of $16,000 per month. The court takes notice that Dr. Lebovitz received a discharge in bankruptcy on September 16, 2005. The Debtor has a real estate license, but is not actively engaged in selling real estate.

Following the filing of the Debtor's amendment to Schedules B and C, the Trustee filed an amended objection to the claim of exemptions. Attached to the objec-

---

1. The pleadings are somewhat confusing. Bettye Sue Bewell was appointed counsel for Mr. Emerson, trustee, on February 17, 2006, but there is no order specifically appointing Ms. Bedwell as counsel for Mr. Hagemeyer, as successor trustee. There appears to be no objection to Ms. Bedwell acting as counsel to Mr. Hagemeyer, but the court suggests that the record be clarified by the filing of an application by Mr. Hagemeyer to employ her.

tion was the affidavit of one of the jewelers relied upon by the Debtor, Las Savell. The affidavit repeats the offer to purchase that the Debtor had testified about in the prior hearing, but goes further, indicating that the offer represents a wholesale value. The retail value of the Debtor's jewelry, according to Mr. Savell, would be two or more times the wholesale price. The Debtor responded by filing a motion to strike the objection and affidavit on the basis that they include additional evidence not presented at the hearing. The Debtor argues that the affidavit was presented after the close of proof, that it contains hearsay, and that she was not given an opportunity to cross-examine the witness. Further, the Debtor argues that the question of value is irrelevant to the determination that the court must make because the wearing apparel exemption contains no monetary limit.

The Trustee responds that at the time of the hearing, the Debtor had made no declaration concerning the value of her jewelry. The Debtor officially took no position concerning the value of the jewelry she claims as exempt until after the hearing on the motion for turnover, and thus the value of the jewelry was not an issue at that hearing. The affidavit of Mr. Savell is offered, in effect, to rebut or supplement the Debtor's statements concerning the value of her jewelry, and in support of the Trustee's objection to the claim of exemption. At the scheduled hearing on the Trustee's objection to the Debtor's claim of exemption, the parties submitted all issues to the court without further argument or evidence.

## ANALYSIS

█ The Debtor argues that she should be able to exempt all of her jewelry as wearing apparel because the wearing apparel exemption provided by Tennessee law is unlimited in amount, the items are worn by the Debtor regularly, have sentimental value to her because they were given to her by her husband, and were not purchased for investment. The Trustee responds that the Debtor is not entitled to claim her jewelry as exempt because the items are neither necessary nor proper wearing apparel for a bankruptcy debtor. As difficult as this case is given the unfortunate illness of Dr. Lebovitz that led to the filing, the Trustee is correct.

The Bankruptcy Code permits a debtor in bankruptcy to set aside certain property as exempt from the claims of creditors. The list of property that may be claimed exempt in bankruptcy is provided at 11 U.S.C. § 522(d). It includes the following:

(3) The debtor's interest, not to exceed $475 in value in any particular item or $9,850 in the aggregate value, in household furnishings, household goods, wearing apparel, appliances, books, animals, crops, or musical instruments, that are held primarily for the personal, family, or household use of the debtor or a dependent the debtor;

(4) The debtor's aggregate interest, not to exceed $1,225 in value, in jewelry held primarily for the personal, family, or household use of the debtor or a dependent of the debtor;

(5) The debtor's aggregate interest in any property, not to exceed in value $975 plus up to $9,250 of any unused amount of the exemption [provided for the debtor's interest in his or her residence].

11 U.S.C. § 522(d). These are the federal bankruptcy exemptions, but not the exemptions that apply in the present case. They are set out here to provide a point of reference for the discussion that follows. Tennessee is one of the states that elected to opt out of the federal bankruptcy exemption provisions pursuant to current

section 522(b)(2). The state of Tennessee has specified that, for purposes of bankruptcy:

> The personal exemptions as provided for in this part, and the other exemptions as provided in other sections of the Tennessee Code Annotated for the citizens of Tennessee, *are hereby declared adequate* and the citizens of Tennessee, pursuant to section 522(b)(1), Public Law 95–598 known as the Bankruptcy Reform Act of 1978, Title 11 U.S.C., section 522(b)(1), *are not authorized to claim* as exempt the property described in the Bankruptcy Reform Act of 1978, 11 U.S.C. 522(d).

Tenn.Code Ann. § 26–2–112 (emphasis added). The implication of the italicized language is that the Tennessee exemptions were thought by the Tennessee legislators to be less generous than the federal bankruptcy exemptions. That they are in fact less generous becomes apparent when the amounts specified for various items of property are compared with the corresponding federal bankruptcy exemption. For example, the state of Tennessee provides for a basic homestead exemption limited to $5,000 for an individual and $7,500 for a married couple, while the Bankruptcy Code provides an exemption for a debtor's interest in his residence, whether real or personal, not to exceed $18,450. The state of Tennessee does not provide a specific exemption for a motor vehicle, while the Bankruptcy Code provides an exemption, not to exceed $2,950 in value, in one motor vehicle. The state of Tennessee provides for a "wild card" exemption of $4,000 in personal property, while the Bankruptcy Code provides an exemption of $975 plus up to $9,250 in the unused portion of the exemption for the debtor's residence.

The exemption provision relied upon by the Debtor in this case is set out at Tennessee Code Annotated § 26–2–104. It provides:

> **Additional personal property absolutely exempt.** (a) In addition to the exemption set out in § 26–2–105, there shall be further exempt to every resident debtor the following specific articles of personalty:
>
> (1) All necessary and proper wearing apparel in the actual use of the debtor and family and the trunks or receptacles necessary to contain same;
>
> (2) All family portraits and pictures;
>
> (3) The family Bible and school books.
>
> (b) The exemption under this section is absolute, and may be exercised by the judgment debtor before or after issuance of any execution, seizure or attachment by a judgment creditor, unless a judgment creditor, is by execution, foreclosing a security agreement on such property.

Tenn.Code Ann. § 26–2–104.

Unlike the Bankruptcy Code, the state of Tennessee provides no specific exemption for jewelry. The Debtor argues that her jewelry is wearing apparel and is the subject of an unlimited exemption under Tennessee law. The Debtor relies upon the decision of the bankruptcy court in *In re Hazelhurst*, 228 B.R. 199 (Bankr. E.D.Tenn.1998). In that case, Bankruptcy Judge Richard Stair acknowledged that the Tennessee Supreme Court has never determined whether jewelry may be claimed as exempt wearing apparel. The bankruptcy court nevertheless held that wearing apparel includes jewelry for purposes of Tennessee law. If the issue were determinate of the outcome of this case, this court might be inclined to certify the question to the Tennessee Supreme Court. This is not necessary, however, because even if the court assumes that the Tennessee Supreme Court would include jewelry within wearing apparel for purposes of the

exemption, the court finds that the Debtor has failed to demonstrate that the jewelry is "necessary and proper" wearing apparel.

 In order to determine what wearing apparel is necessary and proper to a judgment debtor or debtor in bankruptcy, it is important to consider the historical purposes of exemption provisions. While it is unclear whether, in the event of state opt out, the bankruptcy court is to determine the purpose and scope of the exemption provisions pursuant to state law or federal bankruptcy law, the court does not believe that these differ so much as to change the outcome in this case. Bankruptcy exemptions are acknowledged to serve the "historical purpose to protect a debtor from his creditors, to provide him with the basic necessities of life so that even if his creditors levy on all his nonexempt property, the debtor will not be left destitute and a public charge." *In re Clark,* 711 F.2d 21, 21 (3rd Cir.1983) (quoting H.R. 595 Report, 95th Cong., 1st Sess. 126 (1977)). Exemptions are essential to the fresh start provided to the honest, but unfortunate debtor. They are not intended "to provide a windfall to the debtor, however, but rather, to protect the public from the burdens of supporting a destitute family." *In re Hill,* 163 B.R. 598, 601 (Bankr.N.D.Fla.1994). Similarly, although the Tennessee Supreme Court has not addressed in recent memory the purpose of the exemptions provided by Tennessee law, when it did, it clearly stated that:

The public policy underlying our exemption statutes for heads of families is that a creditor should be restrained from having satisfaction of his debt out of certain kinds of property which are necessary to the maintenance of the families of improvident or unfortunate debtors.

*Prater v. Reichman,* 135 Tenn. 485, 187 S.W. 305, 305 (1916). In *Prater* the issue before the court was whether the judgment debtor could claim an automobile as exempt pursuant to a provision for the exemption of "two horses, or two mule, one horse and mule, or one horse or mule, and one yoke of oxen; one ox-cart, yoke, ring, staple, and log chain; one two[-], or one one[-] horse wagon (not to exceed $75 in value), and harness; one man's saddle; one woman's saddle; two riding bridles." *Prater,* 187 S.W. at 305. Even at the time of the opinion, these articles of property sounded quaint, but the court's commentary is instructive:

The schedule of exempt articles under section 3794, Sh.Code, many of which are not mentioned about, embraces such as were, at the time of the legislation, in common use among the class of debtors for whose protection the statute was enacted. The animals and vehicles names in the schedule are such as were owned by such debtors and used by them in the work necessary to support their families, and to accomplish such limited transportation of themselves and their families as might be necessary. An automobile, on the other hand, is an invention not in use when the exemption statute was passed, and so of course is not mentioned therein, and was not within the intent of the Legislature. The automobile is the product of a civilization advanced much beyond the date of our exemption legislation; and it is, as a means of transportation, a different class of vehicle altogether from those named in the statute. It was invented to meet the needs of a different class of citizenship from that intended to be protected by the exemption statutes. It is a vehicle whose owner is usually well able to pay his debts, and whether willing or not to do so, should be thereto compelled.

*Prater,* 187 S.W. at 305. This court is chagrined by the Tennessee court's divi-

sion of debtors into different "classes," language not commonly used in the United States today. Nevertheless, the overriding message of the court is that the Tennessee exemptions are intended to provide workers with the means to support their families. This purpose is consistent with the purpose of the federal bankruptcy exemptions.

■ The Debtor is thus incorrect when she argues that the wearing apparel exemption is "unlimited" under Tennessee law. It clearly is limited to the intended purposes of the exemption provisions, and is explicitly limited to wearing apparel that is necessary and proper. One of the means necessary for the support of a debtor and his or her family is necessary and proper wearing apparel. In line with the general purpose of exemptions to provide workers with the means to support their families, necessary and proper wearing apparel is serviceable apparel appropriate to the work performed by the debtor. The Debtor in this case is not working outside the home, even though she has a real estate license. It is assumed that she is fully occupied in taking care of her minor children and husband who has been seriously ill. No proof was offered, however, tending to show that her jewelry was necessary or proper to any work she is doing or contemplates doing.

In *Hazelhurst*, Judge Stair provided a list of criteria that he used to determine whether jewelry was necessary and proper wearing apparel for purposes of section 26–2–104. These were: (1) the nature of the items, *i.e.*, are they commonly worn articles of jewelry such as rings, earrings, bracelets, watches, and necklaces; (2) how often they are worn by the debtor, *i.e.*, frequently, infrequently, or never; (3) what occasions, if any, dictate the wearing of the jewelry; and (4) value. The Debtor understandably focuses on the first three

criteria to the exclusion of the fourth. Contrary to the position taken by the Debtor in her motion to strike, Judge Stair indicated that value is material to the determination of the applicability of the wearing apparel exception because it may be important in determining whether an article of jewelry may be categorized as a luxury item.

There can be little question that each of the items of jewelry owned by the Debtor is a luxury item. One indication of this is the Bankruptcy Code provision that excepts from discharge consumer debts owed to a single creditor aggregating more than $500 for luxury goods or services incurred in the 90 days before an order for relief is entered. *See* 11 U.S.C. § 523(a)(2)(C)(i). That section provides that "luxury goods and services does not include goods and services reasonably necessary for the support or maintenance of the debtor or a dependent of the debtor." 11 U.S.C. § 523(a)(2)(C)(ii). Those sections taken together indicate that luxury goods may have any value, so long as they are not reasonably necessary for the support or maintenance of the debtor or a dependent of the debtor, but perhaps more clearly become luxury goods when their purchase price exceeds $500. A second indication that the Debtor's jewelry constitutes luxury goods is the limitation of $1,225 in the federal bankruptcy exemption for jewelry. A third indication is that the term "household goods" for purposes of section 522(f)(1)(B) of the Bankruptcy Code as amended by section 1501(a) of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub.L. 109–8 ("BAPCPA"), excludes jewelry with a fair market value of more than $500 in the aggregate (except wedding rings). Wedding rings are treated as personal effects under this section, but their value is nevertheless limited for purposes of the federal bankruptcy exemptions, when aggregated

with all other items of jewelry, to $1,225, plus whatever portion of the wild card exemption the debtor chooses to use for that purpose. A fourth indication that the Debtor's jewelry constitutes luxury goods is the very fact that Tennessee does not provide a specific exemption for jewelry.

 Whether the Debtor's jewelry is valued at its wholesale value or retail value, the items constitute luxury items. The Debtor's argument that value is not relevant to the court's determination is erroneous. Value was important to the court's determination that these are luxury items, and this is true whether the court considers wholesale value or resale value. That is, the Debtor will suffer no prejudice if her motion to strike the Trustee's amended objection and the affidavit of Mr. Savell are denied, because the court finds the items to constitute luxury items, not necessary or proper wearing apparel, based solely on the values acknowledged by the Debtor.

The Debtor urges the court to read into the Tennessee statutes an absolute exemption for wedding rings. As sympathetic as that position seems, the court cannot substitute its judgment for that of the Tennessee legislature, especially in light of other very specific exemptions actually supplied by it, such as the exemption for the family Bible and school books. It is not open to the court to express its own opinion about what property should be able to be claimed as exempt by a bankruptcy debtor living in Tennessee.

### CONCLUSION

For the foregoing reasons, the court finds and concludes that the jewelry claimed as exempt by the Debtor, although conceivably wearing apparel, is not *necessary and proper* wearing apparel, and thus is not subject to exemption pursuant to Tennessee Code Annotated § 26–2–104.

Accordingly, Trustee's Motion for Turnover of Property of the Estate is **GRANTED;** the Debtor's objection thereto is **OVERRULED;** the Trustee's Objection to Claimed Exemptions and Amended Objection to Claimed Exemptions are **SUSTAINED;** the Debtor's Motion to Strike Trustee's Amended Objection to Claimed Exemptions and Attached Affidavit is **DENIED.**